OPINION
{¶ 1} Defendant-appellant, Michael Davenport, appeals the Fayette County Court of Common Pleas decision denying his motion to suppress. We affirm the trial court's decision.
 {¶ 2} On June 23, 2007, appellant was involved in a head-on collision while driving on Greenfield-Sabina Road which resulted in the death of Phyllis Jill Wilson Smith. After being transported to The Ohio State University Medical Center ("OSU Medical Center"), appellant *Page 2 
was subject to a non-forensic blood-alcohol test as part of his medical diagnosis and treatment. The blood-alcohol test revealed appellant had a blood-alcohol level of .261. Appellant was then indicted for, among other things, driving under the influence of alcohol (OVI) in violation of R.C. 4511.19(A)(1)(a), a first-degree misdemeanor, and aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a), a second-degree felony.
 {¶ 3} Appellant moved to suppress his blood-alcohol test results alleging his blood sample was not collected, pursuant to R.C. 4511.19(D)(1)(b), in substantial compliance with the Ohio Department of Health (ODH) regulations. After holding a suppression hearing, the trial court found the state had failed to establish substantial compliance with the ODH regulations. However, notwithstanding lack of substantial compliance with ODH regulations, the trial court determined, pursuant to R.C. 4511.19(D)(1)(a), that appellant's blood-alcohol test results were admissible for purposes of establishing OVI in violation of R.C. 4511.19(A)(1)(a) and the "equivalent offense" of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a).
 {¶ 4} After the trial court overruled his motion, appellant entered a plea of no contest. The trial court then found appellant guilty and sentenced him to five years in prison. Appellant now appeals the trial court's decision denying his motion to suppress, raising one assignment of error.
 {¶ 5} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS THE RESULTS OF CHEMICAL TESTING OF A BLOOD SAMPLE THAT WAS NOT CONDUCTED ACCORDING TO CONTROLLING REGULATIONS AND THAT WAS OTHERWISE INADMISSIBLE."
 {¶ 6} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Wilson, Clinton App. No. CA2006-03-008, 2007-Ohio-353, ¶ 17; State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. An appellate court must accept the *Page 3 
trial court's findings of fact as long as they are supported by competent, credible evidence. Id. However, an appellate court reviews de novo the trial court's application of the law to the facts. State v.Greene, Warren App. No. CA2005-12-129, 2006-Ohio-6084, ¶ 8; State v.Featherstone, 150 Ohio App.3d 24, 2002-Ohio-6028, ¶ 10.
 {¶ 7} Appellant, in his sole assignment of error, argues that the trial court erred in denying his motion to suppress the results of his blood-alcohol test because his blood was not collected, pursuant to R.C. 4511.19(D)(1)(b), in substantial compliance with ODH regulations. Specifically, appellant claims the results of the blood-alcohol test were inadmissible because there was no evidence presented at the suppression hearing in regard to the "chain of custody, or of preservation and labeling" of his blood sample.
 {¶ 8} Appellant, in support of his argument, relies on State v.Mayl, 106 Ohio St.3d 207, 2005-Ohio-4629, in which the Ohio Supreme Court held:
 {¶ 9} "1. When the results of blood-alcohol tests are challenged in an aggravated vehicular-homicide prosecution that depends upon proof of an R.C. 4511.19(A) violation, the state must show substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm. Code Chapter 3701-53 before the test results are admissible."[1]
 {¶ 10} "2. When a blood-alcohol test is not requested by law enforcement but is administered in connection with medical treatment by qualified medical personnel and analyzed in an accredited laboratory, the state must show substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm. Code Chapter 3701-53 before the test results are admissible in a prosecution depending upon proof of an R.C. 4511.19(A) violation." Id., paragraphs one and two of the syllabus.
 {¶ 11} In so holding, the Ohio Supreme Court noted that the applicable version of *Page 4 
R.C. 4511.19(D)(1) did not "[distinguish] between the admissibility of test results obtained by hospitals and the admissibility of those obtained by law enforcement," and that "there [was] no distinction between prosecutions for `per se' or `under the influence' violations."[2]Mayl at ¶ 56. Further, the Court noted that, in finding hospitals were not statutorily exempt from ODH compliance, "if the legislature intended that result, it could have prefaced R.C. 4511.19(D)(1) with that limitation." Id. As a result, the Court determined that "[i]t does not matter whether the prosecution relates to a violation of the per se sections or the under-the-influence section * * * [or] * * * who requests the test" because the applicable version of "R.C. 4511.19(D)(1) covers all prosecutions requiring proof of a violation of R.C. 4511.19(A) or (B)." Id. In concluding, the Court also noted that these principles will apply "until the legislature creates a specific exemption" to the statutory requirements to the then existing R.C. 4511.19(D)(1). Id. at ¶ 61.
 {¶ 12} Since the Ohio Supreme Court's decision in Mayl the Ohio General Assembly passed Am. Sub. H.B. No. 461, effective April 4, 2007, which enacted R.C. 4511.19(D)(1)(a). The applicable version of R.C. 4511.19(D)(1)(a), which has since been further amended, states, in pertinent part:
 {¶ 13} "In any criminal prosecution or juvenile court proceeding for a violation of division [R.C. 4511.19](A)(1)(a) * * * or for an equivalentoffense, the result of any test of any blood * * * withdrawn and analyzed at any health care provider, as defined in section 2317.02 of the Revised Code, may be admitted with expert testimony to be considered with any other relevant and competent evidence in determining the guilt or innocence of the defendant."[3] (Emphasis added.) *Page 5 
 {¶ 14} An "equivalent offense," as defined by R.C. 4511.181(A)(4), includes "a violation of division (A)(1) of section 2903.06 * * *," which defines and criminalizes aggravated vehicular homicide.
 {¶ 15} As the Ohio Supreme Court noted in Mayl, "when the legislature amends an existing statute, the presumption is that it is aware of [the Court's] decisions interpreting it." Id. at ¶ 16, citing Clark v.Scarpelli, 91 Ohio St.3d 271, 2001-Ohio-39. In turn, the General Assembly, by passing Am. Sub. H.B. No. 461 which enacted R.C. 4511.19(D)(1)(a), chose to create a distinction between prosecutions for "per se" and "under the influence" violations in regard to the use of blood-alcohol test results. Therefore, we find that the General Assembly's passage of Am. Sub. H.B. No. 461 was made in direct response to Mayl and created a distinction between "per se" violations and the general "under the influence" violation not found in the former R.C. 4511.19(D)(1).[4]
 {¶ 16} That being said, "if the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." State ex rel. Savarese v. Buckeye LocalSchool Dist. Bd. of Edn., 74 Ohio St.3d 543, 545, 1996-Ohio-291. By applying the plain language of R.C. 4511.19(D)(1)(a), we hold that the results of "any test of *Page 6 any blood" may be admitted with expert testimony and considered with any other relevant and competent evidence in order to determine the guilt or innocence of the defendant for purposes of establishing a violation of division R.C. 4511.19(A)(1)(a), or "an equivalent offense," including aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a), so long as the blood was withdrawn and analyzed at a "health care provider" as defined by R.C. 2317.12. (Emphasis added.) Accordingly, appellant's arguments, pursuant to R.C. 4511.19(D)(1)(b), and in regard to the state's failure to demonstrate substantial compliance with ODH regulations due to the lack of an established chain of custody and the preservation and labeling of his blood sample, are no longer applicable.
 {¶ 17} In this case, appellant was charged with, among other things, OVI in violation of R.C. 4511.19(A)(1)(a) and aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a). In turn, because a violation of R.C. 2903.06(A)(1)(a) is an "equivalent offense" to R.C. 4511.19(A)(1)(a) as defined by R.C. 4511.181(A)(4), the results of appellant's blood test "may be admitted with expert testimony" for purposes of establishing such a violation if his blood was withdrawn and analyzed at a "health care provider" as defined by R.C. 2317.02. See R.C. 4511.19(D)(1)(a).
 {¶ 18} A health care provider, as defined by R.C. 2317.02, is "a hospital, ambulatory care facility, long-term care facility, pharmacy, emergency facility, or health care practitioner." "Hospital" is further defined under R.C. 3727.01(B)(2) as "an institution * * * in which are provided to inpatients diagnostic, medical, surgical, obstetrical, psychiatric, or rehabilitation care for a continuous period longer than twenty-four hours * * *."
 {¶ 19} Appellant was involved in a head-on collision with the victim while he drove his car on Greenfield-Sabina Road. After being transported OSU Medical Center, appellant was subject to a non-forensic, or "medical," blood-alcohol test. The results of the blood-alcohol test revealed that appellant's blood-alcohol level was .261. Appellant was then indicted for *Page 7 
OVI in violation of R.C. 4511.19(A)(1)(a) and aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a).
 {¶ 20} Initially, it is undisputed that the OSU Medical Center is a hospital as defined by R.C. 3727.01(B)(2), and therefore, a health care provider as defined by R.C. 2317.02.
 {¶ 21} Further, at the suppression hearing, Dr. Michael Bissell, the director of clinical chemistry and toxicology at the OSU Medical Center, testified that all of the proper protocol was complied with in regard to the collection of appellant's blood sample. However, since appellant's blood-alcohol test was "medical," and non-forensic, Dr. Bissell was unable to establish a proper chain of custody. Regardless, the trial court, in applying R.C. 4511.19(D)(1)(a), determined the results of appellant's blood-alcohol test were admissible for purposes of establishing appellant's OVI violation under R.C. 4511.19(A)(1)(a) and the "equivalent offense" of aggravated vehicular homicide under R.C. 2903.06(A)(1)(a). We agree with the trial court's application of R.C. 4511.19(D)(1)(a), and therefore, the trial court did not err in denying appellant's motion to suppress the results of his blood-alcohol test. Accordingly, appellant's sole assignment of error is overruled.
 {¶ 22} Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] The requirements of former R.C. 4511.19(D)(1) at the time ofMayl are now contained in R.C. 4511.19(D)(1)(b).
[2] The "per se" violations at the time of Mayl are now included in R.C. 4511.19(A)(1)(b) — (j) and (B), whereas the generic "under the influence" violation is still found in R.C. 4511.19(A)(1)(a).
[3] The current version of R.C. 4511.19(D)(1)(a) was last amended on September 30, 2008.
[4] {¶ a} The former version of R.C. 4511.19(D)(1), which the Ohio Supreme Court applied in Mayl, stated, in pertinent part:
{¶ b} "In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense, the court may admit evidence on the concentration of alcohol, drugs of abuse, or a combination of them in the defendant's * * * blood * * * or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within two hours of the time of the alleged violation.
{¶ c} "When a person submits to a blood test at the request of a law enforcement officer under section 4511.191 of the Revised Code, only a physician, a registered nurse, or a qualified technician, chemist, or phlebotomist shall withdraw blood for the purpose of determining the alcohol, drug, or alcohol and drug content * * *. This limitation does not apply to the taking of breath or urine specimens. * * *
{¶ d} "The bodily substance withdrawn shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." *Page 1