[Cite as *State v. Fridley*, 2017-Ohio-4368.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2016-05-030 |
| | : | O P I N I O N |
| - vs - | | 6/19/2017 |
| | : | |
| BARRY A. FRIDLEY, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2014CR0694

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Kura, Wilford & Schredgardus Co., L.P.A., Sarah M. Schregardus, 492 City Park Avenue, Columbus, Ohio 43215 and D. Timothy Huey, 1985 West Henderson Road, Suite 204, Upper Arlington, Ohio 43220, for defendant-appellant

**RINGLAND, J.**

{¶ 1} Defendant-appellant, Barry Fridley, appeals his conviction and sentence in the Clermont County Court of Common Pleas. For the reasons outlined below, we affirm in part, reverse in part and remand this matter to the trial court for the limited purpose of issuing a nunc pro tunc sentencing entry.

{¶ 2} On November 19, 2014, appellant was driving northbound on State Route 132

when he failed to negotiate a curve and drove left-of-center, causing him to strike and kill the oncoming driver. The passenger of that vehicle also sustained serious injuries.

{¶ 3} Emergency medical personnel responded to the scene. Initially, appellant did not appear to be breathing and was "unarousable" until emergency personnel applied a sternal rub. While appellant was still at the scene of the collision, but while he was receiving care in an ambulance, Trooper Disbennett made contact with appellant. Trooper Disbennett noted a strong odor of an alcoholic beverage on appellant's person. When questioned about whether he had consumed any alcohol that day, appellant replied "not enough."

{¶ 4} Appellant was ultimately transported by helicopter to the University of Cincinnati Hospital. At the hospital, Nurse Megan Heck drew appellant's blood at approximately 6:00 p.m., one hour after the wreck. Nurse Heck testified that she used the hospital's standard kit to prepare the site and draw the blood. Nurse Heck further explained that she prepared the blood samples in accordance with hospital policies and procedures and she testified about those procedures. The results from the initial blood test revealed that appellant's blood alcohol content was .239.

{¶ 5} While the crash scene was still being processed and appellant was receiving medical care, a search warrant was authorized for appellant's medical records and any blood samples taken by the hospital. Additionally, the warrant included a request for a separate blood draw to be done at the request of the Ohio State Highway Patrol.

{¶ 6} The clinical nursing supervisor, Marlene Parker, accompanied three state troopers to appellant's hospital room. Nurse Parker advised that appellant was lucid, but may have a lacerated liver. No other injuries were specified to Trooper Disbennett. When Trooper Disbennett entered appellant's hospital room, he asked appellant if he remembered what had happened and if he had anything to drink that day. Appellant responded that he had no memory of the crash and stated that he had consumed two beers. Later, appellant

stated that he had consumed "two vodkas." Trooper Disbennett then read the search warrant and Nurse Parker performed the blood draw. The blood draw, taken approximately four hours after the collision, revealed that appellant's blood alcohol content was .139.

{¶ 7} Following the blood draw, Trooper Disbennett proceeded to administer the horizontal gaze nystagmus (HGN) test while appellant was seated and partially reclined in his hospital bed. Trooper Disbennett testified that appellant displayed four of six clues of intoxication.

{¶ 8} Appellant was indicted for one count of aggravated vehicular manslaughter, one count of aggravated vehicular assault, one count of vehicular assault, two counts of operating a vehicle under the influence, and one count for failure to control. Appellant moved to suppress evidence of the HGN test, evidence of the blood tests, and statements made to police. Following a suppression hearing, the trial court granted portions of appellant's motion to suppress, but denied the request relating to the errors addressed in this opinion.

{¶ 9} On October 27, 2015, appellant pled no contest to aggravated vehicular homicide in violation of R.C. 2903.06, a second-degree felony, and aggravated vehicular assault in violation of R.C. 2903.08, a third-degree felony. The trial court imposed a five-year prison term for aggravated vehicular homicide and a two-year prison term on the aggravated vehicular assault to be served consecutively for an aggregate prison term of seven years. Appellant now appeals the decision of the trial court, raising three assignments of error for review.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS (10/7/2015 DECISION/ENTRY).

{¶ 12} In his first assignment of error, appellant argues the trial court erred by denying his motion to suppress. Appellant separately challenges the admissibility of the HGN test,

- 3 -

the blood tests, and certain statements made to Trooper Disbennett. We address each issue in turn, but find his arguments lack merit.

{¶ 13} Appellate review of a trial court's decision to grant or deny a motion to suppress is a mixed question of law and fact. *State v. Bell*, 12th Dist. Clermont No. CA2008-05-044, 2009-Ohio-2335, ¶ 8. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *State v. Harsh*, 12th Dist. Madison No. CA2013-07-025, 2014-Ohio-251, ¶ 9. Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Id.*

Admissibility of HGN test

{¶ 14} Appellant challenges the admissibility of the HGN test administered by Trooper Disbennett. Specifically, appellant claims (1) Trooper Disbennett was trained on an earlier NHTSA manual and not the manual in effect at the time of the HGN test, (2) it was improper to conduct the HGN test while in a reclined hospital bed, (3) the HGN test was unreliable because hospital personnel had treated him with narcotics, namely, fentanyl and dilaudid, and (4) he was suffering from a head injury when the HGN test was administered.

{¶ 15} In order for field sobriety testing evidence to be admissible, the state is not required to show strict compliance with testing standards, but must instead demonstrate that the officer substantially complied with NHTSA standards. R.C. 4511.19(D)(4)(b); *State v. Selvage*, 12th Dist. Clermont No. CA2011-08-058, 2012-Ohio-2149, ¶ 12. "A determination of whether the facts satisfy the substantial compliance standard is made on a case-by-case

- 4 -

basis." *State v. Fink*, 12th Dist. Warren Nos. CA2008-10-118 and CA2008-10-119, 2009-Ohio-3538, ¶ 26.

{¶ 16} As stated by the Ohio Supreme Court, "HGN test results are admissible in Ohio without expert testimony so long as the proper foundation has been shown both as to the administering officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test." *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, ¶ 28. In this case, Trooper Disbennett testified about his training and experience in the administration of HGN testing and the technique used in the administration of the test. Immediately following the blood draw, Trooper Disbennett spoke with appellant in his hospital room. Trooper Disbennett explained that he asked appellant if he had suffered a head injury during the accident and appellant denied that he had experienced any such injury. Trooper Disbennet was aware that appellant possibly suffered a lacerated liver, and therefore would need to remain in his hospital bed, but was otherwise unaware of any symptoms of head trauma. Because of appellant's possible lacerated liver, Trooper Disbennett performed the HGN test while appellant was reclined in his hospital bed. Trooper Disbennett concluded that appellant displayed four of six clues of intoxication: lack of smooth pursuit and distinctive nystagmus at maximum deviation in both eyes.

{¶ 17} As to appellant's first argument, it is irrelevant that Trooper Disbennett was trained on an earlier manual, as the test is whether he *substantially complied* with NHTSA standards.

{¶ 18} As to appellant's second argument, the NHTSA standards do not prohibit the administration of the HGN test while the subject is reclined, or even if the subject was lying down. Accordingly, the fact that appellant was in a reclined position does not violate NHTSA or otherwise indicate that the HGN test was not conducted in substantial compliance.

{¶ 19} Appellant's next claim is in response to the medication that he was given prior

to Trooper Disbennett's arrival, namely the drugs dilaudid and fentanyl. Appellant claims that Trooper Disbennett incorrectly testified that those drugs have no effect on the results of an HGN test. In support, appellant cites to secondary sources to support his claim that those drugs affect horizontal nystagmus. However, contrary to appellant's claims, the NHTSA manual states that narcotic analgesics, such as fentanyl and dilaudid, do not affect horizontal nystagmus. Therefore, while appellant may argue otherwise, his claim must fail. Consistent with NHSTA standards, the consumption of fentanyl and dilaudid did not affect the results of the HGN test.

{¶ 20} Finally, appellant argues that he was suffering from a serious head injury at the time that Trooper Disbennett administered the HGN test and therefore the results were unreliable. However, the record reflects that Trooper Disbennett testified that he observed no injuries to appellant's head and was not informed of any evidence to the contrary. Trooper Disbennett was informed that appellant may have suffered a lacerated liver, but was not informed of head trauma. Furthermore, as provided in the NHTSA manual, Trooper Disbennett asked appellant a number of preliminary questions, including whether appellant had suffered any type of head injury, and appellant advised that he had not suffered any such head injury. Trooper Disbennett testified that he did not notice any other symptoms of a head injury while conducting the HGN test, such as the presence of incongruent pupil size. Accordingly, there is no reason to suppress the HGN test based on appellant's assertion that he suffered a head injury.

{¶ 21} Based on our review, we find that Trooper Disbennett substantially complied with NHTSA standards when he administered the HGN test. Trooper Disbennett testified about his training and ability in the administration of the HGN test and the technique used in administering the test. The results of the test showed that appellant exhibited four of six clues of intoxication. As addressed above, the arguments raised by appellant on appeal are

without merit. Therefore, we find the trial court did not error by admitting the results from the HGN test.

Initial Blood Test

{¶ 22} Appellant next challenges the admissibility of the initial blood test on two separate grounds. The initial blood draw was performed at the University of Cincinnati Hospital approximately one hour after the collision. First, appellant claims that he was deprived of his Sixth Amendment Confrontation rights. Second, appellant claims the test should have been excluded based on the scientific unreliability of the testing procedure.

{¶ 23} During the suppression hearing, the state presented the testimony of Nurse Heck, who performed the blood draw, and Bernie Chaffin, a toxicology specialist with the University of Cincinnati Laboratory. Though Chaffin was familiar with the policies and procedures done to ensure accuracy of the testing equipment, he was not the technician that conducted the actual blood testing. That individual was not called as a witness. Appellant did not object to Chaffin's testimony or make any Confrontation Clause argument at the suppression hearing.

{¶ 24} Because appellant failed to object to the admission of the blood test on Confrontation Clause grounds, he has waived the issue for appeal. *State v. Brown*, 2d Dist. Montgomery No. 26826, 2016-Ohio-1258, ¶ 14. This court, however, retains discretion to consider a waived constitutional argument under a plain error analysis. *Id.* An alleged error constitutes plain error only if the error is obvious and but for the error, the outcome of the proceeding clearly would have been different. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 45.

{¶ 25} "The right to confrontation, which includes the right to physically face and cross-examine witnesses, is not a constitutionally compelled rule of pretrial proceedings." *State v. McKenzie*, 10th Dist. Franklin No. 11AP-250, 2011-Ohio-5851, ¶ 8; *State v.*

*Saunders*, 2d Dist. Montgomery No. 22621, 2009-Ohio-1273, ¶ 13. The cases cited by appellant involve a defendant's right to confront witnesses *at trial*, not at the suppression hearing. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527 (2009); *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S.Ct. 2705 (2011). Because the suppression hearing was a pretrial proceeding, the state was not required to present the technician that placed the blood in the testing equipment. Therefore, appellant was not deprived of his constitutional right to confront a witness.

**{¶ 26}** Appellant also argues that the evidence should have been suppressed based on an alleged lack of scientific reliability. Based on a previous decision of this court, we find the evidence was admissible. *State v. Davenport*, 12th Dist. No. CA2008-04-011, 2009-Ohio-557. In *Davenport*, this court held that R.C. 4511.19 allows admission of blood tested by hospitals, even if such a test does not comply with the Ohio Administrative Code, in circumstances where a defendant was transported to the hospital after an accident and underwent a non-forensic, medical blood test. *Id.* at ¶ 16; *State v. Persinger*, 3d Dist. Marion No. 9-15-10, 2016-Ohio-858, ¶ 18 (agreeing with *Davenport* and holding that arguments pursuant to R.C. 4511.19[D][1][b] are not applicable to prosecutions for certain offenses where the results of alcohol blood tests are taken and analyzed by a health care provider). The plain language of R.C. 4511.19(D)(1)(a) permits "any test of any blood" to be introduced with expert testimony and considered with any relevant and competent evidence to determine the guilt or innocence of offenses including aggravated vehicular homicide, so long as the blood was withdrawn and analyzed at a "health care provider" as defined by R.C. 2317.12. *Id.*; *State v. Carr*, 11th Dist. Lake No. 2012-L-001, 2013-Ohio-737, ¶ 65.

**{¶ 27}** There is no dispute that appellant had his blood drawn at the University of Cincinnati Hospital, a "health care provider" as defined by the Revised Code. The state

called the nurse who withdrew the blood to testify about policies and procedures for drawing blood. The state also introduced the testimony of the toxicology specialist at the University of Cincinnati Laboratory who tested the blood. The toxicologist testified how all testing was done pursuant to policies and procedures that were identified in the testimony.

**{¶ 28}** We find the trial court did not err by admitting the evidence from the initial blood draw. The blood draw was performed by a health care provider and was supported by testimony that was competent evidence to determine appellant's guilt or innocence. Appellant also cites Evid.R. 702 and alleges that there was no documentation provided as to the accuracy of the testing method. However, the Supreme Court has previously reviewed similar arguments and held that R.C. 4511.19 provides the appropriate standard for admissibility and is not inconsistent with Evid.R. 702 or in contravention of Section 5, Article IV of the Ohio Constitution. *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, ¶ 16, 28; *State v. James*, 5th Dist. Muskingum No. CT2015-0059, 2016-Ohio-7660, ¶ 33 ("the rules of evidence do not strictly apply at suppression hearings"). In conclusion, the initial blood test was not subject to suppression.

Second Blood Test

**{¶ 29}** Appellant also challenges the admissibility of the second blood draw performed as a result of the search warrant. Because this sample was analyzed by a crime lab, and not a healthcare provider, our analysis is different than above. As previously noted, the results of the second blood test showed that appellant had a blood alcohol level of .139.

**{¶ 30}** The Director of Health promulgated certain regulations in Ohio Adm.Code 3701-53-01 through 3701-53-10 for testing the concentration of alcohol or drugs of abuse found in an individual's blood, breath, or urine. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 9-10. When a defendant challenges the validity of a blood test by way of a pretrial motion to suppress, "the state has the burden to show that the test was administered

- 9 -

in substantial compliance with the regulations prescribed by the Director of Health" to trigger the presumption of admissibility. *Burnside* at ¶ 24, 27. The substantial-compliance standard excuses minor procedural deviations. *State v. Schuster*, 12th Dist. Butler No. CA2016-05-097, 2017-Ohio-4115, ¶ 34. "Once the state has satisfied this burden and created a presumption of admissibility, the burden then shifts to the defendant to rebut that presumption by demonstrating that he was prejudiced by anything less than strict compliance." *Id.*

{¶ 31} We first address appellant's claim that the blood draw was taken outside the permissible time frame set forth in R.C. 4511.19. The Ohio Supreme Court has previously held that a blood sample taken outside of the three-hour time frame set out in R.C. 4511.19(D) may still be admissible to prove that the person was under the influence of alcohol, provided the administrative requirements of R.C. 4511.19(D) are substantially complied with. *State v. Hassler*, 115 Ohio St.3d 322, 2007-Ohio-4947, ¶ 2.

{¶ 32} The state demonstrated substantial compliance with Ohio Adm.Code 3701-53-01 through 3701-53-10 with the testimony of Nurse Parker, Trooper Disbennett, and Chaffin. Nurse Parker testified that that she used a nonalcoholic Betadine or Iodine swab on appellant's skin before a sterile, dry needle was used to withdraw blood into the tubes, which contained a preservative. The tubes contained labels with the date and time of collection, appellant's name, and Nurse Parker's signature who collected the blood and sealed the containers. Thereafter, Trooper Disbennett took custody of the blood vials and returned to the Batavia Patrol Post to package the evidence. Trooper Disbennett then testified that he placed the evidence in transit in compliance with policy and procedures.[1] Reports from the

---

1. Appellant separately argues that the blood specimens were not refrigerated in violation of Ohio Adm.Code 3701-53-05(F). However, the refrigeration requirement expressly states that it is inapplicable when the sample is in transit or under examination. Here, the blood sample was not required to be refrigerated while in transit to the crime lab.

crime lab indicate that the tests were confirmed by gas chromatography.

{¶ 33} In conclusion, while the blood was taken approximately four hours after the collision, the record nevertheless establishes substantial compliance with the Revised Code and Administrative Code. Therefore, the second blood test done pursuant to the search warrant was admissible and appellant's argument is without merit.

Statements

{¶ 34} Finally, appellant argues the trial court erred by denying his request to suppress statements made to police officers while he was receiving care in the hospital. Trooper Disbennett testified that he visited appellant in the hospital and executed the search warrant for appellant's blood. While there, Trooper Disbennett again asked appellant if he had been drinking and appellant stated that he had consumed two beers coming back from his business trip. After several more questions, Trooper Disbennett again asked appellant if he had been drinking and appellant stated that he had consumed two vodkas. Trooper Disbennett testified that he did not read appellant his *Miranda* rights because he was not under arrest.

{¶ 35} "It is well-established that before law enforcement officials question a suspect in custody, the suspect must be advised of his *Miranda* rights and make a knowing and intelligent waiver of those rights before any statements obtained during the interrogation will be admissible as evidence." *State v. Hernandez-Martinez*, 12th Dist. Butler No. CA2011-04-068, 2012-Ohio-3754, ¶ 8. However, the duty to advise a suspect of constitutional rights pursuant to *Miranda* is only required when the police subject a person to custodial interrogation. *State v. Byrne*, 12th Dist. Butler Nos. CA2007-11-268 and CA2007-11-269, 2008-Ohio-4311, ¶ 10.

{¶ 36} "*Miranda* defines custodial interrogation as any 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his

- 11 -

freedom of action in any significant way.'" *State v. Vansickle*, 12th Dist. Fayette No. CA2013-03-005, 2014-Ohio-1324, ¶ 54, quoting *State v. Matthews*, 12th Dist. Butler No. CA2012-09-175, 2013-Ohio-3482, ¶ 10. In determining whether an individual was in custody during an interrogation, the court must examine the totality of the circumstances surrounding the interrogation. *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 12. A person is in custody if he is formally placed under arrest prior to a police interrogation, or, if not formally arrested, when there is a significant restraint on his freedom of movement. *Id.* This determination "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *State v. Henry*, 12th Dist. Preble No. CA2008-04-006, 2009-Ohio-434, ¶ 13. Therefore, "[i]n judging whether an individual has been placed into custody the test is whether, under the totality of the circumstances, a 'reasonable person would have believed that he was not free to leave.'" *Robinson* at ¶ 12, quoting *State v. Gumm*, 73 Ohio St.3d 413, 429 (1995).

{¶ 37} Appellant argues that his statements to Trooper Disbennett should be suppressed because "[c]learly under these circumstances, when an individual has just been presented with a search warrant, forcibly had his blood drawn, physically cannot leave the room and is surrounded by three police officers, a reasonable person would believe they were under arrest." The trial court disagreed with appellant and found:

> Later, when the defendant was in the hospital room, Officer Disbennett again asked the defendant if he had been drinking. An analysis of whether an individual is in custody for purposes of *Miranda* focuses on whether a reasonable person under the circumstances would believe he was under arrest. Both the subjective intent of the [officer] as well as the subjective belief of the suspect are irrelevant in this analysis. Ohio courts have found police questioning of individuals in the hospital, at times, to be custodial in nature.
>
> In the present case, Defendant Fridley was hospitalized because

> of injuries that he had incurred as a result of an automobile accident that he caused. His freedom of movement was restrained by his injury and an IV connection, not police conduct. Officer Disbennett had not placed the defendant under arrest and there was no officer posted at the defendant's door. Under these circumstances, Defendant Fridley was not in custody and, thus, the officer's questions did not occur during a custodial interrogation. Accordingly, Officer Disbennett did not have a duty to advise Defendant Fridley of his privilege against self-incrimination pursuant to *Miranda v. Arizona*. Thus, the statements made by the defendant to Officer Disbennett while the defendant was in his hospital room will not be suppressed.

(Citations omitted.)

Based on our review, we find the record contains competent, credible evidence in support of the trial court's factual findings. Trooper Disbennett testified that appellant was not restrained during the interview and was cooperative throughout the process. Appellant was not restrained by handcuffs or any action by the state. Appellant was restrained only by an IV connection placed into his arm by hospital staff for medical purposes. There is no evidence that appellant was threatened in any way or coerced to make any statements to police. In fact, following the blood draw Trooper Disbennett testified:

> Okay. So after we did the blood draw that's when I spoke to Mr. Fridley about the crash, what had happened. I then did HGN – I actually – he – he asked me a few times what had happened, I didn't tell him at first, because I didn't know if he was stable enough to hear the news, so I went out and spoke to his nurse, and she said if he wants to hear it you can tell him, and then that's when I advised Mr. Fridley what had occurred that night.

While there are some instances in which the questioning of a defendant at a hospital may amount to a custodial interrogation, we simply find that the evidence presented here supports the trial court's findings. *State v. Smith*, 2d Dist. Miami No. 95-CA-17, 1996 Ohio App. LEXIS 1851, *13 (May 10, 1996); *State v. Feaster*, 9th Dist. Summit No. 24367, 2009-Ohio-2558, ¶ 20. Appellant's interview did not take place in a lockdown environment and the nursing staff was still able to attend to appellant's medical needs during the interview. There was no

- 13 -

indication that appellant was uncomfortable during the interview, or that his responses were a function of any coercion that he felt as a result of police presence. The testimony by Trooper Disbennett indicates that appellant voluntarily spoke with him and had genuine questions about the incident. Accordingly, we find the trial court did not err by denying appellant's motion to suppress statements made to Trooper Disbennett while in the hospital.

Conclusion

**{¶ 38}** Having reviewed all of appellant's arguments in support of his motion to suppress, we find his arguments to be without merit. Accordingly, appellant's first assignment of error is without merit and hereby overruled.

**{¶ 39}** Assignment of Error No. 2:

**{¶ 40}** TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF MR. FRIDLEY'S RIGHTS UNDER THE SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

**{¶ 41}** In his second assignment of error, appellant argues that his trial counsel was ineffective for failing to raise the issues detailed in his first assignment of error. We disagree.

**{¶ 42}** To prevail on an ineffective assistance of counsel claim, an appellant must establish (1) that his trial counsel's performance was deficient; and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). Failure of one prong of the *Strickland* test is fatal to any claim of ineffective assistance of counsel. *State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 49. In the context of a plea, prejudice will not be found unless a defendant demonstrates there is a reasonable probability that, if not for counsel's errors, he would not have entered a plea. *State v. Tribune*, 12th Dist. Warren No. CA2016-04-027, 2017-Ohio-1407, ¶ 7.

- 14 -

{¶ 43} As addressed in appellant's first assignment of error, the evidence that appellant sought to suppress was admissible. Counsel cannot be ineffective for failing to object to admissible evidence. *State v. Spradlin*, 12th Dist. Clermont No. CA2016-05-026, 2017-Ohio-630, ¶ 89. Accordingly, we find that appellant did not receive ineffective assistance of counsel. Appellant's second assignment of error is overruled.

{¶ 44} Assignment of Error No. 3:

{¶ 45} THE TRIAL COURT ERRED WHEN IT FAILED TO MAKE THE REQUISITE FINDINGS TO IMPOSE CONSECUTIVE SENTENCES UNDER R.C. 2929.14(C)(4).

{¶ 46} In his third assignment of error, appellant argues the trial court erred by sentencing him to consecutive prison terms, alleging the record does not support the imposition of consecutive sentences and his sentence is contrary to law. We disagree, but nevertheless reverse in part and remand this matter to the trial court for the limited purpose of issuing a nunc pro tunc sentencing entry.

{¶ 47} Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *State v. Dillon,* 12th Dist. Madison No. CA2012-06-012, 2013-Ohio-335, ¶ 9. First, the trial court must find that the consecutive sentence is necessary to protect the public from future crime or to punish the offender. R.C. 2929.14(C)(4). Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *Id.* Third, the trial court must find that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part

of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

**{¶ 48}** "A trial court satisfies the statutory requirement of making the required findings when the record reflects that the court engaged in the required analysis and selected the appropriate statutory criteria." *State v. Setty*, 12th Dist. Clermont Nos. CA2013-06-049 and CA2013-06-050, 2014-Ohio-2340, ¶ 113. In imposing consecutive sentences, the trial court is not required to provide a word-for-word recitation of the language of the statute or articulate reasons supporting its findings. *Id.* Nevertheless, the record must reflect that the trial court engaged in the required sentencing analysis and made the requisite findings. *Id.* The court's findings must thereafter be incorporated into its sentencing entry. *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 10.

**{¶ 49}** Here, the record reflects that the trial court made the findings required by R.C. 2929.14(C)(4) when it ordered appellant's sentences be served consecutively. Specifically, the trial court made extensive remarks concerning the case and then explicitly stated:

The Court finds that consecutive service of sentence -- of a prison sentence in this case -- the prison sentences are necessary to protect the public from future crime or to punish the offender. The consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger he poses to the public, and the Court finds that the harm caused by his acts were so great or unusual that no single prison term for any of the offenses committed as part of the course of conduct adequately reflects the seriousness of his conduct.

**{¶ 50}** Though appellant suggests otherwise, it is clear that the trial court complied with the dictates of R.C. 2929.14(C)(4). *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-

- 16 -

317, ¶ 37; *State v. Sess,* 12th Dist. Butler No. CA2015-06-117, 2016-Ohio-5560, ¶ 35-38. It is also clear that the record supports the trial court's findings that the harm caused by appellant's offenses was so great or unusual that no single prison term adequately reflected the seriousness of his conduct and that consecutive sentences were necessary to punish appellant and protect the public.

{¶ 51} Nevertheless, and as conceded by the state, the trial court erred by failing to incorporate its statutory findings at the hearing into the judgment entry of conviction. *State v. Lung,* 12th Dist. Clermont No. CA2014-12-081, 2015-Ohio-3833, ¶ 19-20 (remanding matter to the trial court for the limited purpose of issuing a nunc pro tunc sentencing entry to reflect the trial court's statutory findings under R.C. 2929.14[C][4]). However, as noted by the Ohio Supreme Court, "[a] trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law." *Bonnell* at ¶ 30. Instead, "such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court." *Id.*

{¶ 52} To that end, although we find no error in the trial court's decision to impose consecutive sentences in this matter, we sustain appellant's third assignment of error as it relates to the trial court's failure to incorporate the consecutive sentence findings it made at the sentencing hearing into its sentencing entry. Therefore, we remand this matter to the trial court for the limited purpose of issuing a nunc pro tunc sentencing entry to reflect the trial court's statutory findings under R.C. 2929.14(C)(4). "Such an administrative correction does not necessitate a new sentencing hearing." *Lung* at ¶ 20. The trial court's decision to impose consecutive sentences in all other respects is affirmed.

{¶ 53} Judgment affirmed in part, reversed in part and remanded to the trial court for

the limited purpose of issuing a nunc pro tunc sentencing entry.

HENDRICKSON, P.J., and M. POWELL, J., concur.