[Cite as *State v. Abner*, 2021-Ohio-4549.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-05-048 |
| | : | O P I N I O N |
| - vs - | | 12/27/2021 |
| | : | |
| TOMMY EUGENE ABNER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 20CR37193

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

William F. Oswall, Jr., for appellant.

**S. POWELL, J.**

{¶ 1} Appellant, Tommy Eugene Abner, appeals his conviction in the Warren County Court of Common Pleas after he entered a no contest plea to two counts of aggravated vehicular homicide and three counts of operating a vehicle while under the influence of drugs ("OVI"). For the reasons outlined below, we affirm Abner's conviction.

{¶ 2} On August 31, 2020, the Warren County Grand Jury returned an indictment charging Abner with one count of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a), a first-degree felony in accordance with R.C. 2903.06(B)(2)(b)(i), and one count of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a), a second-degree felony in accordance with R.C. 2903.06(B)(3). The indictment also charged Abner with one count of OVI in violation of R.C. 4511.19(A)(1)(a), one count of OVI in violation of R.C. 4511.19(A)(1)(j)(ix), and one count of OVI in violation of R.C. 4511.19(A)(1)(j)(i), all first-degree misdemeanors in accordance with R.C. 4511.19(G)(1)(a).

{¶ 3} The charges arose as a result of a tragic automobile accident on State Route 73 in Clearcreek Township, Warren County, Ohio at approximately 7:45 p.m. on the evening of Jun 18, 2020 that resulted in the death of Jeri Beth Murray. There is no dispute that at the time of the accident Abner was operating his vehicle with a suspended driver's license. There is also no dispute that test results of Abner's blood and urine specimens taken at the hospital shortly after the accident occurred revealed that Abner was under the influence of methamphetamine and amphetamines at the time of the accident. A subsequent examination of Abner's blood and urine specimens conducted at the state crime lab confirmed these test results.

{¶ 4} On December 17, 2020, Abner filed a general, boilerplate motion seeking to suppress the test results of his blood and urine specimens taken at the hospital shortly after the accident occurred. The trial court held a suppression hearing on February 22, 2021. During this hearing, the trial court heard testimony from several witnesses. This includes testimony from the registered nurse who collected Abner's first blood specimen and the clinical lab assistant who collected Abner's second blood specimen, both of which occurred at the hospital shortly after the accident occurred.

{¶ 5} Following this hearing, on April 5, 2021, the trial court issued a decision

denying Abner's motion to suppress. In so holding, the trial court initially stated regarding the test of Abner's urine specimen:

> With regard to the urine test, [the registered nurse who collected Abner's urine sample] testified that he collected the urine directly from a sterile catheter into a clean glass screw top container, which was sealed and delivered to the lab in accordance with laboratory protocol.

The trial court then noted its finding that "this evidence demonstrates substantial compliance with the [Ohio Administrative Code] regulations." The trial court also found Abner had not "produced sufficient rebutting evidence to demonstrate that he has been prejudiced in any way by the manner of urine collection in this case."

{¶ 6} The trial court then stated regarding the test of Abner's blood specimen:

> With regard to the blood test, both [the registered nurse who collected Abner's first blood sample and the clinical lab assistant who collected Abner's second blood sample] testified that the blood was collected with sterile needles into a self-sealing tube and labeled appropriately. The solution used to clean the skin was not alcohol-based. The tubes contained anticoagulants. Each sample was transported to the lab and tested within an hour and then refrigerated. From there, [a sergeant with the Ohio State Highway Patrol] testified that she transported the blood and urine to the state crime lab.

Therefore, just like it did with the test of Abner's urine specimen, the trial court found "this evidence also demonstrates substantial compliance with the [Ohio Administrative Code] regulations." This was in addition to the trial court finding Abner had failed to produce "sufficient rebutting evidence to demonstrate that he has been prejudiced in any way by the manner of blood collection in this case."

{¶ 7} On April 15, 2021, Abner entered a no contest plea to the five charged offenses set forth above, i.e., two counts of aggravated vehicular homicide and three counts of OVI. Finding allied offenses of similar import, the trial court merged together the two aggravated vehicular homicide offenses and merged together the three OVI offenses for

purposes of sentencing. Following the trial court's merger, the state then elected to proceed with sentencing Abner on the charge of first-degree felony aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a) and on the charge of first-degree misdemeanor OVI in violation of in violation of R.C. 4511.19(A)(1)(j)(i). Pursuant to the Reagan Tokes Law, Ohio's indefinite sentencing structure as set forth in R.C. 2967.271, the trial court then sentenced Abner to serve an indefinite mandatory minimum term of 11 years in prison to a potential maximum term of 16 and 1/2 years in prison.

{¶ 8} Abner now appeals his conviction, raising two assignments of error for review. For ease of discussion, Abner's two assignments of error will be addressed out of order.

{¶ 9} Assignment of Error No. 2:

{¶ 10} THE TRIAL COURT ERRED WHEN IT DENIED ABNER'S MOTION TO SUPPRESS.

{¶ 11} In his second assignment of error, Abner argues the trial court erred by denying his motion to suppress the test results of his blood and urine specimens taken at the hospital shortly after the accident occurred. We disagree.

{¶ 12} "Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact." *State v. Turner*, 163 Ohio St.3d 421, 2020-Ohio-6773, ¶ 14, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. "Therefore, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Leder*, 12th Dist. Clermont No. CA2018-10-072, 2019-Ohio-2866, ¶ 17, citing *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court, however, independently

- 4 -

reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12; *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 14 ("the appellate court must decide the legal questions independently, without deference to the trial court's decision").

{¶ 13} Pursuant to Crim.R. 47, in filing a motion to suppress in a criminal proceeding, the defendant "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought." "This requires [the] defendant to 'state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided.'" *State v. Miller*, 12th Dist. Warren No. CA2020-01-003, 2021-Ohio-277, ¶ 24, quoting *State v. Shindler*, 70 Ohio St.3d 54 (1994), syllabus. After the defendant meets this burden, the burden then shifts to the state to show substantial compliance with the applicable standards. *State v. Plunkett*, 12th Dist. Warren No. CA2007-01-012, 2008-Ohio-1014, ¶ 11, citing *Xenia v. Wallace*, 37 Ohio St.3d 216, 220 (1988). The extent of the state's burden of proof establishing substantial compliance, however, "only extends to the level with which the defendant takes issue with the legality of the test." *State v. Nicholson*, 12th Dist. Warren No. CA2003-10-106, 2004-Ohio-6666, ¶ 10, citing *State v. Johnson*, 137 Ohio App.3d 847, 852 (12th Dist.2000) ("the evidence produced at the hearing addressed the issue * * * to the degree of specificity required by the motion to suppress"). "Therefore, when a defendant's motion only raises issues in general terms," such as the case here, "the state is only required to demonstrate compliance in general terms." *Id.*

{¶ 14} This means "[s]pecific evidence is not required unless the defendant raises a specific issue in his [or her] motion [to suppress]." *Id.* For example, "[w]hen a defendant

files a motion to suppress that provides factual bases specific to the defendant's case in support of his or her claims that a particular [Ohio Department of Health] regulation was not followed, the state must show substantial compliance with that [Ohio Department of Health] regulation." (Emphasis deleted.) *State v. Dugan*, 12th Dist. Butler No. CA2012-04-081, 2013-Ohio-447, ¶ 33, citing *State v. Deutsch*, 12th Dist. Butler No. CA2008-03-035, 2008-Ohio-5658, ¶ 11. But, "[w]hen the language in the motion to suppress raises only general claims, even though accompanied by specific administrative code subsections, then there is only a slight burden on the state to show, in general terms, compliance with the health regulations." *State v. Jimenez*, 12th Dist. Warren No. CA2006-01-005, 2007-Ohio-1658, ¶ 25, citing *Johnson* at 851.

*Collection and Handling of Blood and Urine Specimens*

{¶ 15} "The Director of Health promulgated certain regulations in Ohio Adm.Code 3701-53-01 through 3701-53-10 for testing the concentration of alcohol or drugs of abuse found in an individual's blood, breath, or urine." *State v. Fridley*, 12th Dist. Clermont No. CA2016-05-030, 2017-Ohio-4368, ¶ 30, citing *Burnside*, 2003-Ohio-5372 at ¶ 9-10. Because of this, Abner claims the trial court erred by denying his motion to suppress since there were "multiple issues" related to the state's compliance, or lack thereof, with Ohio Adm.Code 3701-53-05. That administrative code section provides, in pertinent part, the following:

(B) When collecting a blood sample, an aqueous solution of a non-volatile antiseptic shall be used on the skin. No alcohols shall be used as a skin antiseptic.

(C) Blood shall be drawn with a sterile dry needle into a vacuum container with a solid anticoagulant, or according to the laboratory protocol as written in the laboratory procedure manual based on the type of specimen being tested.

(D) The collection of a urine specimen must be witnessed to assure that the sample can be authenticated. Urine shall be

- 6 -

deposited into a clean glass or plastic screw top container which shall be capped, or collected according to the laboratory protocol as written in the laboratory procedure manual.

* * *

(F) While not in transit or under examination, all blood and urine specimens shall be refrigerated.

Ohio Adm.Code 3701-53-05(B)

{¶ 16} Abner initially argues the trial court erred by denying his motion to suppress because the record suggests the "possible use of alcohol as an antiseptic" in the collection of his blood and urine specimens in violation of Ohio Adm.Code 3701-53-05(B). However, Ohio Adm.Code 3701-53-05(B) applies only to the collection of blood, not urine. Moreover, just as the trial court found, the record plainly establishes that that Abner had his blood drawn by registered nurse and by clinical lab assistant consistent with their respective training as employees of the hospital. The record further demonstrates that Chlorhexidine, a substance which was described at the suppression hearing as an aqueous solution of a nonvolatile antiseptic, is what hospital staff are trained to use on an individual's skin when collecting that individual's blood.

{¶ 17} The record also reveals that Chlorhexidine would not affect the results of a blood specimen, like Abner's blood specimen at issue here, as it relates to the presence or absence of controlled substances like methamphetamine or amphetamines. This is to say nothing of the fact that even assuming alcohol was used on Abner's skin, which the record indicates there was not, the results of Abner's blood test did not detect the presence of alcohol. Therefore, given the above, we find the state met its slight burden requiring it to establish substantial compliance with the requirements set forth in Ohio Adm.Code 3701-53-05(B). Accordingly, Abner's claim that the state failed to demonstrate substantial compliance with Ohio Adm.Code 3701-53-05(B) lacks merit.

## Ohio Adm.Code 3701-53-05(D)

{¶ 18} Abner next argues the trial court erred by denying his motion to suppress because the record is unclear whether "the blood and urine draws were witnessed by anyone other than the individuals who did the draws" in violation of Ohio Adm.Code 3701-53-05(D).  However, Ohio Adm.Code 3701-53-05(D) only applies to the collection of urine, not blood.  Moreover, the record firmly demonstrates that the collection of Abner's urine was witnessed by the nurse who inserted the catheter and drew the urine from Abner's person directly into the sample container.  "Substantial compliance with the regulation does not require the [witness] to watch the suspect while he urinates, as long as the sample is otherwise collected under circumstances that do not raise suspicions about the sample's authenticity."  *State v. Gordon*, 8th Dist. Cuyahoga No. 80079, 2002-Ohio-2140, ¶ 16.  Such is clearly the case here.  Therefore, given the above, we find the state also met its slight burden requiring it to establish substantial compliance with the requirements set forth in Ohio Adm.Code 3701-53-05(D).  Accordingly, Abner's claim that the state failed to demonstrate substantial compliance with Ohio Adm.Code 3701-53-05(D) lacks merit.

## Ohio Adm.Code 3701-53-05(F)

{¶ 19} Abner additionally argues the trial court erred by denying his motion to suppress because "it is not clear that the samples were properly refrigerated until after the testing has already occurred" in violation of Ohio Adm.Code 3701-53-05(F).  However, as the record indicates, Abner's blood and urine specimens were collected from Abner's person and then immediately transferred to the hospital's lab for examination, a process the record indicates took mere minutes to complete.  The record indicates that Abner's blood and urine specimens were then examined and subsequently placed in a refrigerated storage area until they were released to a sergeant with the Ohio State Highway Patrol who

transported them to the state crime lab. Ohio Adm.Code 3701-53-05(F) plainly states that blood and urine specimens shall be refrigerated "[w]hile not in transit or under examination." The record indicates that is exactly what occurred here. Therefore, given the above, we find the state likewise met its slight burden requiring it to establish substantial compliance with the requirements set forth in Ohio Adm.Code 3701-53-05(F). Accordingly, Abner's claim that the state failed to demonstrate substantial compliance with Ohio Adm.Code 3701-53-05(F) lacks merit.

*"Permit" to Conduct Testing on Blood and Urine Specimens*

{¶ 20} Abner lastly argues the trial court erred by denying his motion to suppress because the state failed to prove the hospital where his blood and urine specimens were collected and originally examined had the "proper permit" to conduct "testing for cases involving impaired drivers." Abner claims this constitutes a violation of Ohio Adm.Code 3701-53-09. Abner, however, did not raise this issue as part of his motion to suppress. But, even if Abner had raised this issue in his motion, the record establishes that Abner's blood and urine specimens were also independently tested by the state crime lab, a lab in which Abner acknowledged possessed the necessary permits to examine those specimens as required by Ohio Adm.Code 3701-53-09. Therefore, even assuming Abner had properly raised this issue in his motion to suppress, any error would be harmless in that Abner cannot demonstrate any resulting prejudice therefrom. Accordingly, Abner's claim the trial court erred by denying his motion to suppress because the state failed to prove the hospital where his blood and urine specimens were collected and originally examined had the "proper permit" to conduct "testing for cases involving impaired drivers" lacks merit.

*Admissibility of Abner's Blood and Urine Test Results Under R.C. 4511.19(D)(1)(a)*

{¶ 21} That said, even assuming Abner could establish a violation of Ohio Adm.Code 3701-53-05 and/or Ohio Adm.Code 3701-53-09, which he cannot, the test results of Abner's

blood and urine specimens would still have been admissible at trial under R.C. 4511.19(D)(1)(a). That statute allows for the admission of blood or urine tested by hospitals, even if such a test does not comply with the Ohio Administrative Code, in certain circumstances where a defendant was transported to the hospital after an accident and underwent a non-forensic, medical blood or urine test. *Fridley*, 2017-Ohio-4368 at ¶ 26. This includes circumstances where the defendant was being prosecuted for the two offenses that Abner was ultimately convicted of in this case, i.e., aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a) and OVI in violation of R.C. 4511.19(A)(1)(j)(i). *See State v. Mendoza*, 6th Dist. Wood No. WD-10-008, 2011-Ohio-1971, ¶ 19; and R.C. 4511.181(A)(1) and (A)(4). This is nearly the exact same holding this court issued in a previous decision wherein we found a trial court did not err in denying appellant's motion to suppress his blood-alcohol test results given the test results would have been admissible at trial in accordance with R.C. 4511.19(D)(1)(a). *State v. Davenport*, 12th Dist. Fayette No. CA2008-04-011, 2009-Ohio-557, ¶ 19-21.

{¶ 22} This court does not stand alone in reaching such a decision. *See, e.g., State v. Williams*, 1st Dist. Hamilton No. C-180574, 2020-Ohio-1367, ¶ 29 ("[u]nder the plain language of R.C. 4511.19[D][1][a], the state was not required to show substantial compliance with the Administrative Code regulations before the results of Williams's blood and urine tests could be admitted as evidence of his guilt to prove these offenses, as long as the other requirements in R.C. 4511.19[D][1][a] were met"); *State v. Bugg*, 9th Dist. Medina No. 17CA0087-M, 2018-Ohio-2544, ¶ 8, 12 (acknowledging that "substantial compliance with Ohio Adm.Code Chapter 3701-53 is no longer required for admissibility purposes if the defendant's blood is drawn and analyzed by a health care provider, and is accompanied by expert testimony" under R.C. 4511.19[D][1][a] when affirming the trial court's decision denying appellant's motion to suppress appellant's blood test results); and

*State v. Carr*, 11th Dist. Lake No. 2012-L-001, 2013-Ohio-737, ¶ 65 ("[s]ince the present case involves an offense under R.C. 4511.19[A][1][a], the [blood] test occurred at a hospital, and was submitted with the testimony of Nurse Berman and Rohde about the methods used to take the sample and used by the hospital to test such a sample, it was admissible under R.C. 4511.19[D][1][a]").  Therefore, given this court's holding in *Davenport*, because the trial court did not err by denying Abner's motion to suppress the test results of his blood and urine specimens taken at the hospital shortly after the accident occurred, Abner's second assignment of error lacks merit and is overruled.

{¶ 23} Assignment of Error No. 1:

{¶ 24} ABNER WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO OBJECT TO THE IMPOSITION OF AN INDETERMINATE SENTENCE UNDER R.C. 2967.271.

{¶ 25} In his first assignment of error, Abner argues his trial counsel provided ineffective assistance by not challenging the constitutionality of the Reagan Tokes Law, Ohio's indefinite sentencing structure as set forth in R.C. 2967.271, thereby failing to preserve the issue for appeal.  This court, however, has already determined that "[t]rial counsel's failure to raise the constitutionality of the Reagan Tokes Law, an argument which has proven unsuccessful in this and other districts, does not constitute ineffective assistance."  *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353, ¶ 18; *see, e.g., State v. Roberson*, 12th Dist. Warren No. CA2021-01-003, 2021-Ohio-3705, ¶ 41-44 (trial counsel was not ineffective for failing to raise a constitutional challenge to the Reagan Tokes Law given that no appellate court had found the Reagan Tokes Law unconstitutional at the time appellant was sentenced and because precedent from this court had already determined that the Reagan Tokes Law was not unconstitutional in that it does not violate an offender's right to due process or the separation-of-powers doctrine).

Therefore, because Abner's trial counsel did not provide ineffective assistance of counsel by not challenging the constitutionality of the Reagan Tokes Law, thereby failing to preserve the issue for appeal, Abner's first assignment of error also lacks merit and is overruled.

{¶ 26} Judgment affirmed.

PIPER, P.J., and HENDRICKSON, J., concur.