FRANK D. CELEBREZZE, JR., J.:
{¶ 1} Plaintiff-appellant, the state of Ohio, brings this appeal challenging the trial court's judgment granting the motion to suppress filed by defendant-appellee, Brandon Harper ("Harper"). The state argues that the results of Harper's blood test were admissible pursuant to R.C. 4511.19(D)(1)(a) and that the trial court erroneously held that the state should have obtained search warrants to conduct the blood test and obtain the test results. After a thorough review of the record and law, this court affirms.
I. Factual and Procedural History
{¶ 2} The instant criminal proceedings arose from a motor vehicle accident that Harper was involved in on June 22, 2016. Harper sustained a head injury during the accident and the responding Fairview Park police officers transported him to the emergency department at Fairview Hospital where he was treated. Hospital personnel decided to perform a blood draw in the course of Harper's medical treatment. The blood test revealed that Harper had an ethanol alcohol level of 308, which converts to a blood alcohol concentration of .256. (Tr. 85.) The state obtained the results of Harper's blood test through a subpoena.
{¶ 3} In Cuyahoga C.P. No. CR-16-609724-A, the Cuyahoga County Grand Jury returned a four-count indictment on September 22, 2016, charging Harper with (1) aggravated vehicular assault, a third-degree felony in violation of R.C. 2903.08(A)(1)(a), (2) aggravated vehicular assault, a fourth-degree felony in violation of R.C. 2903.08(A)(2)(b), (3) driving while under the influence, a first-degree misdemeanor in violation of R.C. 4511.19(A)(1)(a), and (4) driving while under the influence, a first-degree misdemeanor in violation of R.C. 4511.19(A)(1)(g). Harper was arraigned on October 6, 2016; he pled not guilty to the indictment.
{¶ 4} On November 29, 2016, Harper filed a motion to exclude certain testimony pursuant to Evid.R. 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc. , 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Specifically, Harper sought to prohibit the state from introducing testimony and evidence regarding the blood draw, *711 the results of the blood draw, and the derivation of his blood alcohol content.
{¶ 5} On January 20, 2017, Harper filed a motion to suppress (1) the results of the tests pertaining to his coordination, sobriety, and alcohol or drug consumption, (2) any observations or opinions of the responding police officers, (3) any statements made by Harper, and (4) any physical evidence obtained by the responding officers. Harper argued, in relevant part, that the results of his blood test should be suppressed because the officers lacked probable cause to arrest him, he had not been placed under arrest when the blood draw was performed, his blood was taken without a warrant in violation of the Fourth Amendment to the United States Constitution, his blood sample was not properly collected, contained, sealed, and stored as required by Ohio Administrative Code Section 3701-53-05, and the "chemical test" was not admissible pursuant to Evid.R. 702 and Daubert .
{¶ 6} On June 20, 2017, the trial court held a hearing on Harper's motion to suppress. The state called the following four witnesses at the suppression hearing: (1) Karen Patel, a physician assistant in the emergency department at Fairview Hospital, (2) Dena Allen, Fairview Hospital laboratory manager, (3) Dr. Harold Schueler, chief toxicologist with the Cuyahoga County Medical Examiner's Office, and (4) Fairview Park Police Officer Richard Rutt, who responded to the scene of the motor vehicle accident.
{¶ 7} At the close of the suppression hearing, the trial court concluded that "there is no expert testimony that the Court could rely on to determine the validity of the blood alcohol test." (Tr. 156.) Furthermore, the trial court held that the blood draw should have been conducted pursuant to a search warrant, and that the results of the blood draw should also have been obtained through a search warrant, rather than a subpoena. Accordingly, the trial court granted Harper's motion to suppress in part, suppressing the results of the blood test.
{¶ 8} It is from this judgment that the state filed the instant appeal on June 30, 2017. The state assigns two errors for review:
I. Because Harper's blood was drawn and analyzed by a health care provider pursuant to R.C. 4511.19(D)(1)(a), the trial court erred in suppressing the results due to non-compliance with regulations.
II. The trial court erred in suppressing blood results on the basis that they were obtained without a search warrant because the blood draw was done for a medical purpose by a non-governmental actor and obtained by police through lawful subpoena pursuant to R.C. 2317.02(B)(2)(a).
II. Law and Analysis
A. Standard of Review
{¶ 9} This court's review of a decision on a motion to suppress is a mixed question of law and fact. State v. Lennon , 8th Dist. Cuyahoga No. 104344, 2017-Ohio-2753, 2017 WL 1957124, citing State v. Burnside , 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.
"In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility." State v. Curry , 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). Therefore, a reviewing court must accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. [ Burnside at ¶ 8 ]. Accepting the facts as true, the reviewing court then *712 must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. Id. An appellate court reviews the trial court's application of the law to its factual findings, however, based on a de novo standard of review. State v. Belton , 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 100.
State v. Riedel , 2017-Ohio-8865, --- N.E.3d ----, ¶ 30.
B. R.C. 4511.19(D)(1)(a)
{¶ 10} In the first assignment of error, the state argues that the trial court erred by granting Harper's motion to suppress the results of his blood test because the test results were admissible pursuant to R.C. 4511.19(D)(1)(a).
{¶ 11} In State v. Mayl , 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, the Ohio Supreme Court held that in order for blood test results to be admissible in a prosecution for a violation of R.C. 4511.19(A), the blood test results must substantially comply with the administrative requirements of R.C. 4511.19(D). Id. at paragraphs one and two of the syllabus. The court explained that even when the blood test is taken and analyzed by a health care provider in connection with medical treatment, rather than law enforcement, the state must show substantial compliance with R.C. 4511.19(D)(1) and Ohio Administrative Code Chapter 3701-53. Id. at ¶ 55. The court expressly noted that "[n]o portion of R.C. 4511.19(D)(1) distinguishes between the admissibility of test results obtained by hospitals and the admissibility of those obtained by law enforcement." Id. at ¶ 56.
{¶ 12} Nearly two years after the Ohio Supreme Court's Mayl decision, the Ohio General Assembly passed Am.Sub.H.B. No. 461, effective April 4, 2007, which amended R.C. 4511.19 by enacting R.C. 4511.19(D)(1)(a). R.C. 4511.19(D)(1)(a) provides,
In any criminal prosecution or juvenile court proceeding for a violation of division (A)(1)(a) of this section or for an equivalent offense that is vehicle-related, the result of any test of any blood or urine withdrawn and analyzed at any health care provider, as defined in section 2317.02 of the Revised Code, may be admitted with expert testimony to be considered with any other relevant and competent evidence in determining the guilt or innocence of the defendant.
(Emphasis added.)
{¶ 13} As an initial matter, Harper argues that the state failed to establish that Fairview Hospital is a health care provider as defined in R.C. 2317.02. Specifically, Harper asserts that the state did not elicit any testimony regarding the type of facility that Fairview Hospital is. We disagree.
{¶ 14} R.C. 2317.02(B)(5)(b) defines a health care provider as "a hospital, ambulatory care facility, long-term care facility, pharmacy, emergency facility, or health care practitioner." The record reflects that the state presented sufficient evidence during the suppression hearing to establish that Fairview Hospital is a health care provider as defined in R.C. 2317.02.
{¶ 15} Karen Patel, a physician assistant in Fairview Hospital's emergency department, testified that Fairview Hospital is part of the Cleveland Clinic system. She explained that her duties as a physician assistant are to "see patients, assess patients, order testing, medications, [and] treatment plans." (Tr. 16.) Dena Allen, Fairview Hospital's laboratory manager, testified that Fairview Hospital is "a 500 bed acute care hospital. It's part of Cleveland Clinic Health System." (Tr. 46.)
*713 {¶ 16} Officer Rutt asserted that when he arrived at the scene of the motor vehicle accident, Harper and the other female motorist who had been involved in the accident were in ambulances being treated by emergency medical services ("EMS") personnel. Both Harper and the other motorist were transported to the emergency department at Fairview Hospital following the accident. When Officer Rutt arrived at Fairview hospital, he spoke with Harper and the female motorist. The female motorist "was in the trauma room and her-they had her neck-she was in like a neck brace. I believe EMS put her in the neck brace and she was in the trauma area [at Fairview Hospital]." (Tr. 116.) The first responders were concerned about the female motorist because she was pregnant. Harper was also in the emergency department and "[h]e was laying down, in a bed, in a hospital gown, he was pretty much immobilized as well." (Tr. 117.) First responders were concerned about Harper because he struck his head during the motor vehicle accident.
{¶ 17} The testimony of Patel, Allen, and Officer Rutt sufficiently demonstrates that Fairview Hospital is a hospital and an emergency facility. Therefore, we find no merit to Harper's assertion that the state failed to establish that Fairview Hospital is a health care provider as defined in R.C. 2317.02.
{¶ 18} In its reply brief, the state acknowledges that " R.C. 4511.19(D)(1)(a) does not require trial courts to admit all blood test results generated by health care providers." (Emphasis added.) Appellant's reply brief at 3. Nevertheless, the state argues that the statute "forecloses the exclusion of the blood test results on the basis that regulations were not followed." Id. In other words, the state asserts that the trial court did not have discretion to exclude the blood test results for failure to comply with Ohio regulations because the General Assembly, through the passage of H.B. 461 and the enactment of R.C. 4511.19(D)(1)(a), legislatively resolved the issues of reliability and admissibility regarding blood tests performed and analyzed by health care providers. The state further contends that any deficiencies regarding the blood test and test results, such as chain of custody issues and compliance with regulations, pertains to the weight of the evidence, not the admissibility of the evidence.
{¶ 19} Harper, on the other hand, argues that the trial court's judgment focused on the reliability of the blood test and the test results, rather than compliance with regulations. Specifically, Harper asserts that the state failed to present expert testimony or otherwise demonstrate that the results of Harper's blood test, including Harper's ethanol value, were reliable. Harper emphasizes that compliance with regulations need not be considered because the state failed to demonstrate (1) who drew the blood and how the blood was drawn, (2) who tested the blood sample and how the sample was tested, and (3) that the test results were reliable. Harper argues that these deficiencies cast doubt on the reliability of the blood draw and test results.
{¶ 20} We must note that the state presumes that the trial court granted the motion to suppress the results of the blood test based on the failure to comply with regulations. This presumption is not supported by the record.
{¶ 21} The trial court did not specifically cite the failure to comply with testing regulations as its basis for suppressing the test results. The trial court explained that the testimony of Dr. Schueler, the state's expert witness, was "crucial" to the state's case and the admissibility of the test results under R.C. 4511.19(D)(1)(a). The trial *714 court concluded, however, that the state, through the expert testimony of Dr. Schueler, failed to present expert testimony "determin[ing] the validity of [Harper's] blood alcohol test." (Emphasis added.) (Tr. 156.)
{¶ 22} In support of this conclusion, the trial court explained that Dr. Schueler did not perform any analysis to come to a conclusion regarding Harper's ethanol value, the only thing he had available to him was a document indicating Harper's ethanol value, he could not verify that the 308 ethanol value was accurate or scientifically valid, and he could not confirm that no mistakes were made during the testing process. The trial court went on to explain that Patel had no independent recollection about the blood draw, and that Allen had no documentation indicating that the laboratory's quality control procedures were in effect when Harper's blood was tested.
When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Fanning (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583.
Burnside , 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.
{¶ 23} As noted above, when considering a motion to suppress, the trial court is in the best position to resolve factual questions and evaluate the witnesses' credibility. Id. We must accept the trial court's factual findings if they are supported by competent, credible evidence in the record. Id.
{¶ 24} In the instant matter, the trial court was in the best position to make these factual determinations and evaluate the credibility of the witnesses that testified at the suppression hearing, including the state's expert witness, Dr. Schueler. We find that the trial court's factual finding that the state failed to establish that Harper's blood test results were valid is supported by competent, credible evidence in the record.
{¶ 25} Dr. Schueler acknowledged that he did not perform any independent testing or analyses of Harper's blood sample in order to reach the conclusion about Harper's ethanol value. Dr. Schueler had no firsthand knowledge regarding Harper's blood draw or the testing of Harper's blood sample. Dr. Schueler simply converted Harper's ethanol value to determine his blood alcohol concentration level.
{¶ 26} Dr. Schueler could not testify regarding the reliability or accuracy of Harper's ethanol value because he did not perform any independent testing or analyses, but merely took the ethanol value and converted it to a blood alcohol level. Furthermore, Dr. Schueler testified that when he reviews reports from the Cleveland Clinic, he typically gets "a full laboratory report or a full medical chart, which would include a lot of chemistries." (Tr. 84.) He explained that in this case, he did not receive Harper's full laboratory report or medical chart; he only received Harper's ethanol level.
{¶ 27} Dr. Schueler acknowledged during the suppression hearing that he had not performed any of his own work in the case. He did not author the document that identified Harper's ethanol value nor verify that Harper's ethanol value was accurate. Dr. Schueler acknowledged that he could not confirm to a reasonable degree of scientific certainty that Harper's ethanol value was, in fact, 308. Dr. Schueler could not confirm that the test results were scientifically *715 legitimate, that the blood test was run correctly, that there were no mistakes made during the testing process, what machine was used to run the test, or whether the machine was functioning properly. Dr. Schueler testified that he had not seen the quality control records from Fairview Hospital.
{¶ 28} Aside from Dr. Schueler's testimony, Patel testified that the Cleveland Clinic has specific policies and procedures for drawing blood, these policies and procedures apply to all Cleveland Clinic personnel, and that these policies and procedures are strictly adhered to. Allen testified that Fairview Hospital has specific nursing policies and procedures for drawing blood, the laboratory has standard operating procedures for processing samples, and that the laboratory has quality control measures in place for processing samples. Neither Patel nor Allen had firsthand knowledge that these policies and procedures were, in fact, followed when Harper's blood was drawn or when his blood sample was tested.
{¶ 29} There was no direct evidence or testimony indicating that the policies and procedures were followed when Harper's blood was drawn and tested. The staff member that drew Harper's blood did not testify at the suppression hearing, nor is there any evidence that establishes who performed the blood draw. The staff member that tested Harper's blood sample did not testify at the suppression hearing.
{¶ 30} Based on the foregoing analysis, we find that the trial court's factual finding that the state failed to establish that the test results were valid is supported by competent, credible evidence in the record. Accordingly, we must accept the trial court's findings of fact.
{¶ 31} Accepting these facts as true, we then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8. The state directs this court to State v. Davenport , 12th Dist. Fayette No. CA2008-04-011, 2009-Ohio-557, 2009 WL 295397.
{¶ 32} In Davenport , the Twelfth District held that R.C. 4511.19(D)(1)(a) allows the admission of blood test results conducted by a health care provider, even if the state fails to demonstrate compliance with testing regulations. Id. at ¶ 16. The director of clinical chemistry and toxicology at the hospital where the defendant's blood was tested testified at the trial court's suppression hearing that "all of the proper protocol was complied with in regard to the collection of [the defendant's] blood sample." Id. at ¶ 21.
{¶ 33} After review, we find this case to be distinguishable from Davenport . Here, unlike Davenport , the Fairview Hospital staff members that drew and tested Harper's blood did not testify at the trial court's suppression hearing, and thus, there was no evidence or testimony indicating that proper protocol was followed.
{¶ 34} Furthermore, the Davenport court did not hold that the admission of blood test results conducted by a health care provider is mandatory. Rather, "the Twelfth District held that a trial court has discretion to admit test results of any blood draw as contemplated in R.C. 4511.19(D)(1)(a)." (Emphasis added.) State v. Oliver , 9th Dist. Summit No. 25162, 2010-Ohio-6306, 2010 WL 5421401, ¶ 7, citing Davenport .
{¶ 35} As noted above, R.C. 4511.19(D)(1)(a) provides that the result of any blood test withdrawn and analyzed by a health care provider may -not shall -be admitted with expert testimony. We find that the statute's use of the permissive *716 word "may" vested the trial court with discretion to admit the results of the blood test. The admission of the test results was not mandatory.
{¶ 36} We cannot say that the trial court abused its discretion by granting Harper's motion to suppress the results of the blood test based on Dr. Schueler's lack of firsthand knowledge about the testing and analyses of Harper's blood sample, and his inability to confirm that the test results were accurate or reliable to a reasonable degree of scientific certainty. Accordingly, the state's first assignment of error is overruled.
III. Conclusion
{¶ 37} After thoroughly reviewing the record, we cannot say that the trial court abused its discretion by granting Harper's motion to suppress the results of his blood test. R.C. 4511.19(D)(1)(a) provides that the results of a blood test conducted by a health care provider may be admitted with expert testimony. The expert testimony that the state presented during the trial court's suppression hearing failed to indicate that the results of Harper's blood test were, in fact, valid, accurate, or reliable. Therefore, the trial court properly exercised its discretion by granting Harper's motion to suppress.
{¶ 38} Our disposition of the first assignment of error renders the state's second assignment of error moot.
{¶ 39} Judgment affirmed.
MARY EILEEN KILBANE, P.J., and LARRY A. JONES, SR., J., CONCUR