[Cite as *State v. Williams*, 2020-Ohio-1367.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180574 |
| | | TRIAL NO. B-1600122 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| JAMES WILLIAMS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:   Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: April 8, 2020

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mary Stier*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Law Office of John D. Hill, LLC,* and *John D. Hill*, for Defendant-Appellant.

**MYERS, Judge.**

{¶1} Defendant-appellant James Williams appeals the trial court's judgment convicting him of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a).

{¶2} In four assignments of error, Williams argues that the trial court erred in denying his motion for a mistrial, that the trial court improperly admitted evidence and testimony concerning the presence of alcohol and drugs in his body, that his conviction was against the manifest weight of the evidence, and that the cumulative effect of the errors that occurred during trial deprived him of a fair trial. Finding no merit to Williams's arguments, we affirm the trial court's judgment.

### *Factual and Procedural Background*

{¶3} On June 22, 2015, a single vehicle automobile accident occurred when a vehicle registered to Williams traveling on Ronald Reagan Cross County Highway entered the median, where it struck a guard rail and went airborne. The vehicle traveled down an embankment, somersaulted across Caldwell Road, and came to rest on its passenger side. Jaytwan Smith was ejected from the vehicle and was pronounced dead at the scene. Williams was found in the front passenger seat of the vehicle, lying against the window with his back and head against the glovebox.

{¶4} Williams was charged with aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a) (for causing the death of another while operating a motor vehicle while committing a violation of R.C. 4511.19(A)), aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a) (for causing the death of another while operating a motor vehicle recklessly), operating a vehicle under the influence

2

of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a), and operating a vehicle with a prohibited concentration of alcohol in his blood in violation of R.C. 4511.19(A)(1)(f).

{¶5} Williams filed a motion to suppress certain statements that he made after the accident before his *Miranda* rights had been read to him. He also sought to suppress a blood-alcohol test, arguing that his blood had not been drawn in compliance with the relevant Ohio Administrative Code regulations. Following a hearing on the motion to suppress, the trial court denied the motion with respect to statements made by Williams after the accident, but it granted the motion with respect to the blood-alcohol test. As a result of the trial court's ruling, the state dismissed the charge for operating a vehicle with a prohibited concentration of alcohol in his blood in violation of R.C. 4511.19(A)(1)(f).

{¶6} Williams additionally filed a motion in limine. As relevant to this appeal, the motion sought to prevent not only the admission of the concentration levels of alcohol and drugs found in his urine and blood, but the admission of any evidence that his blood and urine tests showed the presence of drugs or alcohol to prove the remaining charges. The hearing on the motion in limine was held before a visiting judge. Both Williams and the state agreed that, based on the trial court's ruling on the motion to suppress, the results of the blood-alcohol test were not admissible to prove the per se driving under the influence violation. But the state argued that its expert witness, who had reviewed Williams's medical records, was permitted under R.C. 4511.19(D)(1)(a) to testify that Williams was under the influence and appreciably impaired based on his blood-alcohol level and the fact that he tested presumptively positive for cocaine and a marijuana metabolite. The trial

court ruled that it would allow the state's expert "to testify to the fact that there was alcohol, drugs, or whatever else, in the Defendant's blood sample, but not the numerical conclusion." It further ordered that the numerical blood-alcohol test result be redacted from Williams's medical records.

{¶7}  Williams was tried before a jury on the remaining charges. During trial, the state presented testimony from several witnesses whom Williams had told that he was driving the vehicle when the accident occurred. Springfield Township firefighter and paramedic Alex Villanueva testified that he had responded to the automobile accident, treated Williams on the scene, and transported him to the hospital. Villanueva admitted that he was unaware if Williams had suffered a brain injury, but he described Williams's level of consciousness as "alert and oriented." Williams told Villanueva that he had been driving the vehicle and that he had not been wearing a seatbelt. He also denied having consumed alcohol or taken drugs, and Villanueva did not smell an odor of alcohol on Williams's person.

{¶8}  Federal Bureau of Investigation Agent Patricia Fuller testified that she had been a Springfield Township Police Officer at the time of the accident and had investigated the crash involving Williams. Agent Fuller spoke with Williams at the hospital, and after initially stating that he did not remember what had happened, Williams twice told her that he had been driving the vehicle when the crash occurred. Williams also told Agent Fuller that Brian Harris had been the vehicle's other passenger. Agent Fuller detected an odor of alcohol on Williams. Williams appeared to understand her questions, but Agent Fuller testified that she was unaware if Williams had suffered a traumatic brain injury in the accident. Williams asked to cease their conversation because he was groggy, but before she left the hospital,

Agent Fuller overheard Williams verify to a female companion that he had been driving at the time of the accident.

{¶9}  Smith's mother, Stephanie Frazier Taylor, spoke with Williams at the hospital the day after the accident.  Frazier Taylor asked Williams if he had driven drunk and killed her son, and he responded "yes."  Williams then apologized and stated that he could not remember what had actually happened during the accident. Williams appeared alert and had answered questions appropriately.

{¶10} Stephanie Jones Taylor, Williams's girlfriend at the time of the accident, testified that she visited Williams in the hospital after learning of the accident.  She stated that Williams was hysterical, and when asked if he had been awake, stated that he was "in and out."  Williams initially told Jones Taylor that he had been driving the vehicle during the accident, but later made inconsistent statements to her about his role in the accident and would go "back and forth" as to whether or not he had been driving.

{¶11} Jones Taylor testified that less than a week after the automobile accident, she suffered a stroke.  She acknowledged that she had suffered some short-term memory loss after the stroke, but stated that she had not experienced any memory loss regarding Williams's accident.  During her testimony, Jones Taylor stated that Williams's biggest fear was that "he didn't want to go back to the penitentiary because he would disappoint his family."  Defense counsel immediately objected and moved for a mistrial.  The trial court denied the motion for a mistrial and instructed the state to inform the witness not to make any reference to Williams having been previously incarcerated.

{¶12} Former Springfield Township Police Officer Tom Prichard, who had investigated the automobile accident, testified that the vehicle involved in the accident was registered to Williams. Officer Prichard described the path that the vehicle had traveled during the accident. He testified that Williams was found lying on the front-passenger window of the vehicle, with his back and head up against the glove box. He also identified for the jury where Smith's body was found after it had been ejected from the vehicle. Officer Prichard testified that he had spoken to Williams at the hospital a few days after the accident. At the time of their conversation, Williams was in the Intensive Care Unit, but appeared to be coherent. Williams denied driving the vehicle at the time of the accident, and told Officer Prichard that someone named "J-Tone" had been the vehicle's other occupant. He also stated that he had been out at a bar with Smith prior to the accident.

{¶13} Officer Prichard discussed the accident report that he had prepared. The report noted that excess speed and the presence of alcohol were contributing factors to the crash. It additionally stated that cocaine and marijuana were found in Williams's system, but it did not specify any specific amount of those drugs and it noted that the results of those tests were unconfirmed.

{¶14} DNA testing was conducted on multiple items obtained from Williams's car. Tracy Sundermeier, a serologist in the Hamilton County Coroner's Laboratory, testified that she had tested the vehicle's driver airbag and obtained a mixed DNA profile from it that consisted of a major profile and two minor profiles. She determined that Williams was the source of the major DNA profile, and excluded Smith as a donor to that profile. Sundermeier was also able to obtain a DNA profile

from a blood stain on the front-passenger airbag. That profile also matched Williams and excluded Smith as a donor.

{¶15} Robert Topmiller, Chief of Toxicology in the Hamilton County Coroner's Laboratory, testified as an expert for the state. Topmiller had examined Williams's medical records, specifically looking at the toxicology testing that had been done at the hospital. He testified that the records established that alcohol was present in Williams's blood serum and that Williams's urine screen was presumptively positive for cocaine and THC, which he explained was the main active ingredient in marijuana. Topmiller then discussed the potential effect that these substances can have on a person.

{¶16} George Jerome Shaw, III, an attending physician at the University of Cincinnati Medical Center, testified as an expert for Williams. Shaw testified that Williams had suffered a traumatic brain injury in the accident. This diagnosis was based on the results of a CT scan and the results of a neurobehavioral cognitive status examination, which showed mild to moderate impairment in Williams's neurologic function. Shaw noted that Williams's medical records indicated that he was unable to provide any additional history of the incident due to intoxication, and he testified that Williams's inability to provide this information could have been the result of the traumatic brain injury rather than intoxication. He further questioned the reliability of Williams's memory of the accident.

{¶17} The jury returned guilty verdicts on all counts. At sentencing, the trial court merged the offenses of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a) and operating a motor vehicle under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a) into the offense of aggravated vehicular

homicide in violation of R.C. 2903.06(A)(1)(a), and it imposed a sentence of 8 years in prison.

### *Motion for a Mistrial*

{¶18} In his first assignment of error, Williams argues that the trial court erred in denying his motion for a mistrial after Jones Taylor testified that he had previously been to the penitentiary.

{¶19} We review the trial court's ruling on a motion for a mistrial for an abuse of discretion. *State v. Jones*, 1st Dist. Hamilton No. C-180091, 2019-Ohio-4862, ¶ 74. A mistrial should only be granted when a fair trial is no longer possible, and not solely because an error or irregularity in the proceeding has occurred. *Id.* An abuse of discretion connotes more than an error of law or of judgment, and indicates an unreasonable, arbitrary, or unconscionable attitude by the trial court. *Pembaur v. Leis*, 1 Ohio St.3d 89, 91, 437 N.E.2d 1199 (1982).

{¶20} In response to a question from the prosecutor as to whether she and Williams had any additional conversations about the accident after a certain point in time, Jones Taylor testified that Williams had stated that his biggest fear was that "he didn't want to go back to the penitentiary because he would disappoint his family." Defense counsel immediately objected and moved for a mistrial, arguing that Williams could not be rehabilitated in the eyes of the jury, which would now presume that he had a criminal record.

{¶21} Testimony that Williams had previously served time in a penitentiary would be impermissible other-acts evidence under Evid.R. 404(B). But the state did not directly ask Jones Taylor a question about Williams's criminal history or prior incarceration. Rather, the testimony was volunteered by the witness in response to

8

the state's question regarding conversations between Jones Taylor and Williams about the accident. Other than this brief reference from Jones Taylor, the jury heard no testimony about Williams's prior record and was unaware of what offense he had committed. We cannot find that this isolated, vague statement from Jones Taylor deprived Williams of a fair trial. *See State v. Daniels*, 1st Dist. Hamilton Nos. C-950347 and C-950348, 1996 WL 72277, *2 (Feb. 21, 1996).

{¶22} The trial court did not abuse its discretion in denying Williams's motion for a mistrial. The first assignment of error is overruled.

### *Admission of Evidence Concerning Alcohol and Drugs*

{¶23} In his second assignment of error, Williams argues that the trial court erred in admitting testimony and evidence concerning the presence of alcohol, cocaine, and THC in his blood and urine. We review the trial court's admission of evidence for an abuse of discretion. *State v. Jones*, 1st Dist. Hamilton No. C-170647, 2020-Ohio-281, ¶ 30; *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.

{¶24} Williams acknowledges that the trial court prohibited the concentration levels found in his urine and blood from being admitted into evidence, but argues that it was error to allow Officer Prichard and Topmiller to testify that alcohol, cocaine, and marijuana had been in his system because the chemical tests of his bodily substances were not conducted in compliance with the relevant Ohio Administrative Code regulations.

{¶25} In support of his argument, Williams relies on *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216 (2005). In *Mayl*, the Ohio Supreme Court held that "[w]hen results of blood-alcohol tests are challenged in an

aggravated-vehicular-homicide prosecution that depends upon proof of an R.C. 4511.19(A) violation, the state must show substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm.Code Chapter 3701-53 before the test results are admissible." *Id.* at paragraph one of the syllabus. Williams argues that under *Mayl*, any testimony that alcohol and drugs were found in his system was not admissible because the state never demonstrated that the blood and urine tests were conducted in substantial compliance with the Ohio Revised and Administrative Code provisions.

{¶26} In *Mayl,* the court relied on R.C. 4511.19(D)(1) to reach its determination. R.C. 4511.19(D)(1) has been amended subsequent to the *Mayl* decision. It now includes the following language:

> In any criminal prosecution or juvenile court proceeding for a violation
> of division (A)(1)(a) of this section or for an equivalent offense that is
> vehicle-related, the result of any test of any blood or urine withdrawn
> and analyzed at any health care provider, as defined in section 2317.02
> of the Revised Code, may be admitted with expert testimony to be
> considered with any other relevant and competent evidence in
> determining the guilt or innocence of the defendant.

R.C. 4511.19(D)(1)(a).

{¶27} In *State v. Davenport*, 12th Dist. Fayette No. CA208-01-011, 2009-Ohio-557, the court analyzed amended R.C. 4511.19(D)(1)(a). It considered whether the results of a blood-alcohol test that had not been conducted in substantial compliance with the relevant Ohio Administrative Code regulations were admissible in a prosecution for operating a vehicle under the influence of alcohol in violation of

R.C. 4511.19(A)(1)(a) and for aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a). The *Davenport* court held that:

> [T]he General Assembly, by passing Am.Sub.H.B. No. 461 which enacted R.C. 4511.19(D)(1)(a), chose to create a distinction between prosecutions for "per se" and "under the influence" violations in regard to the use of blood-alcohol test results. Therefore, we find that the General Assembly's passage of Am.Sub. H.B. No. 461 was made in direct response to *Mayl* and created a distinction between "per se" violations and the general "under the influence" violation not found in the former R.C. 4511.19(D)(1).
>
> *   *   *
>
> By applying the plain language of R.C. 4511.19(D)(1)(a), we hold that the results of "*any test of any blood*" may be admitted with expert testimony and considered with any other relevant and competent evidence in order to determine the guilt or innocence of the defendant for purposes of establishing a violation of division R.C. 4511.19(A)(1)(a), or "*an equivalent offense,*" including aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a), so long as the blood was withdrawn and analyzed at a "health care provider" as defined by R.C. 2317.12. (Emphasis added.) Accordingly, appellant's arguments, pursuant to R.C. 4511.19(D)(1)(b), and in regard to the state's failure to demonstrate substantial compliance with ODH regulations due to the lack of an established chain of custody and the

preservation and labeling of his blood sample, are no longer applicable.

*Id.* at ¶ 15-16.

{**¶28**} Several of our other sister districts have reached similar conclusions. In *State v. Bugg*, 9th Dist. Medina No. 17CA0087-M, 2018-Ohio-2544, ¶ 12, which involved a prosecution for aggravated vehicular homicide, the court held that under amended R.C. 4511.19(D)(1)(a), "substantial compliance with Ohio Adm.Code Chapter 3701-53 is no longer required for admissibility purposes if the defendant's blood is drawn and analyzed by a health care provider, and is accompanied by expert testimony." And in *State v. Persinger*, 2016-Ohio-858, 60 N.E.3d 831, ¶ 18 (3d Dist.), the court determined that R.C. 4511.19(D)(1)(a) was enacted in response to the Ohio Supreme Court's decision in *Mayl*. The defendant in *Persinger* had been charged with multiple offenses, including aggravated vehicular homicide and operating a vehicle while under the influence. The court held that the state did not need to demonstrate substantial compliance with Ohio Administrative Code regulations before admitting the defendant's blood-alcohol content to establish a violation of R.C. 4511.19(A)(1)(a). *Id.* at ¶ 19.

{**¶29**} We agree with our sister districts' interpretation of amended R.C. 4511.19(D)(1)(a). Williams was charged with aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a) and operating a vehicle under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a). Under the plain language of R.C. 4511.19(D)(1)(a), the state was not required to show substantial compliance with the Administrative Code regulations before the results of Williams's blood and urine tests could be admitted as evidence of his guilt to prove these offenses, as long as the

other requirements in R.C. 4511.19(D)(1)(a) were met. *See Bugg* at ¶ 12. And here, the concentration levels of alcohol and drugs found in Williams's blood and urine were never even admitted into evidence. The trial court only allowed evidence that alcohol, cocaine, and THC had been found in Williams's system, and this was accompanied by expert testimony.

{¶30} The trial court did not abuse its discretion in allowing testimony and evidence concerning the presence of alcohol, cocaine, and THC in Williams's bodily substances. Williams's second assignment of error is overruled.

### Manifest Weight of the Evidence

{¶31} In his third assignment of error, Williams argues that his convictions for aggravated vehicular homicide and driving under the influence of alcohol or drugs were contrary to the manifest weight of the evidence.

{¶32} The charges for aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a) and driving under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a) were merged at sentencing with the charge for aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a). No sentence was imposed for either offense, and Williams was not convicted of those offenses. Because no judgment of conviction was entered, we do not consider a challenge to the weight of the evidence for the offenses of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a) and driving under the influence of alcohol or drugs. *See State v. Cooper*, 1st Dist. Hamilton No. C-180401, 2019-Ohio-2813, ¶ 15.

{¶33} In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the

13

credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

{¶34} Williams was convicted of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a), which provides that "[n]o person, while operating or participating in the operation of a motor vehicle * * * shall cause the death of another * * * [a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance." Williams specifically contends that the weight of the evidence did not establish that he had been driving the vehicle at the time of the accident.

{¶35} The evidence presented at trial established that Williams told four separate persons that he had been driving the vehicle when the automobile accident occurred. While being transported to the hospital, Williams told paramedic Alex Villanueva that he had been the driver of the vehicle. He made the same admission to both Agent Fuller and to Smith's mother when they spoke with him at the hospital. And finally, Williams admitted to his then-girlfriend Stephanie Jones Taylor that he had been driving the vehicle during the accident.

{¶36} Contradicting these admissions, the jury heard further testimony from Jones Taylor that Williams had begun to go "back and forth" as to whether he had been the driver or the passenger of the vehicle, and that he had denied driving the vehicle to Officer Prichard. The jury additionally was able to consider the testimony from Williams's expert that Williams had suffered a traumatic brain injury and that his memory of the accident was not reliable. The jury was in the best position to judge the credibility of the witnesses. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. It was entitled to weigh this

evidence, consider Williams's motivation at the time that the statements were made, and elect to believe some, all, or none of the testimony offered.

{¶37} In addition to Williams's admissions that he had been driving at the time of the accident, the state presented evidence that the vehicle involved in the accident was registered to Williams and that Williams's DNA was the source of the major DNA profile found on the driver's airbag. The jury's determination that Williams had been driving the vehicle at the time of the accident was not against the weight of the evidence.

{¶38} This was not the rare case in which the jury lost its way and committed such a manifest miscarriage of justice in finding Williams guilty that his conviction must be reversed. *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. We hold that Williams's conviction for aggravated vehicular homicide was not against the manifest weight of the evidence. The third assignment of error is overruled.

### *Cumulative Error*

{¶39} In his fourth assignment of error, Williams argues that the cumulative effect of the errors that occurred at trial deprived him of a fair trial. Having rejected Williams's assignments of error and found the presence of no error, harmless or otherwise, we reject Williams's cumulative error argument.

{¶40} The fourth assignment of error is overruled, and the judgment of the trial court is accordingly affirmed.

Judgment affirmed.

**MOCK, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.