[Cite as *State v. Sickels*, 2026-Ohio-1732.]

## IN THE OHIO COURT OF APPEALS
## FIFTH APPELLATE DISTRICT
## TUSCARAWAS COUNTY, OHIO

STATE OF OHIO

  Plaintiff - Appellee

-vs-

RICHARD L. SICKELS

  Defendant - Appellee

Case No. 2025 AP 07 0028

Opinion and Judgment Entry

Appeal from the Court of Common Pleas, Case No. 2024 CR 10 0339

Judgment:   Affirmed

Date of Judgment Entry: May 12, 2026

**BEFORE:** Andrew J. King; William B. Hoffman; Craig R. Baldwin, Judges

**APPEARANCES:** KRISTINE W. BEARD, for Plaintiff-Appellee; BRETT H. HILLYER, for Defendant-Appellant.

*King, P.J.*

{¶ 1}   Defendant-Appellant Richard Sickels appeals the July 22, 2025 judgment of conviction and sentence of the Tuscarawas County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

### Facts and Procedural History

{¶ 2}   This matter began on March 17, 2024 at 2:51 a.m. when Sickels crashed his Dodge Challenger, killing his wife and severely injuring himself and two passengers.

{¶ 3}   Ohio State Highway Patrol Officers arrived on the scene shortly thereafter to find the Challenger lying on its passenger side. The occupants had to be extracted through the windshield of the vehicle. During that process, Trooper Duval detected an

odor of alcohol coming from the vehicle. One passenger stated Sickels had been drinking before the crash.

{¶ 4} Sickels was transported from the scene to Cleveland Clinic Mercy Hospital. Before transport, Sickels was given fentanyl for pain. Sickels arrived at the hospital at 3:52 a.m. As part of Sickels' treatment, doctors ordered blood and urine toxicology screening. The urine screen indicated Sickels had benzodiazepines, cannabinoids, and opioids in his system. His blood testing indicated he had a blood alcohol level of .292. In a later phone call with Trooper Duvall, Sickels admitted to consuming alcohol before the crash.

{¶ 5} As a result of these events, on October 25, 2024, the Tuscarawas County Grand Jury returned an indictment charging Sickels with one count of aggravated vehicular homicide, a felony of the second degree, one count of aggravated vehicular homicide, a felony of the third degree, operating a vehicle under the influence of alcohol, a drug of abuse or a combination of them (OVI), a misdemeanor of the first degree, two counts of aggravated vehicular assault, felonies of the third degree and two counts of aggravated vehicular assault, felonies of the fourth degree.

{¶ 6} Sickels entered pleas of not guilty and filed a motion to suppress the blood and alcohol testing performed by Cleveland Clinic Mercy Hospital. Sickels' motion argued the State had failed to comply with 72 provisions of the Ohio Administrative Code (OAC) in the collection of the urine and blood. The trial court held a hearing on the motion on March 5, 2025.

{¶ 7} Two Cleveland Clinic Mercy nurses who attended to Sickels upon his arrival testified at the hearing on behalf of the State. Intensive care unit nurse Ruble testified she collected a clean urine catch from Sickels for treatment purposes in accordance with the orders, procedures, and policies of the hospital and sent the sample to the hospital lab for

analysis. Emergency room nurse Rader testified that she collected a blood sample from Sickels for treatment purposes at 5:36 a.m., and did so in accordance with the orders, procedures and policies of the hospital, then sent the sample to the hospital lab for analysis.

{¶ 8} Dr. Safar, a medical director and pathologist at the Cleveland Clinic Mercy lab also testified on behalf of the State. Dr. Safar testified the lab is certified by the College of American Pathologists and is in good standing. She further testified that all lab technicians are certified, and the instruments used for testing are subject to calibration and other quality controls at the beginning of every shift. Dr. Safar indicated she did not conduct the testing in this matter, but was aware Sickels' urine testing was positive for benzodiazepines, cannabinoids, and opioids. She further testified Sickels' blood testing indicated an ethanol level of .293 grams per milliliter.

{¶ 9} At the close of testimony the trial court directed the parties to submit closing arguments in writing. On May 21, 2025, the trial court denied the motion to suppress.

{¶ 10} On June 4, 2025, the State dismissed count one, aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a) a felony of the second degree, count three, operating a vehicle under the influence of alcohol, a drug of abuse or a combination of them in violation of R.C. 4511.19(A)(1)(f), a misdemeanor of the first degree, and one count of aggravated vehicular assault in violation of R.C. 2903.06(A)(2)(a), a felony of the third degree. Sickels then entered pleas of no contest to aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a), a felony of the third degree, operating a vehicle under the influence in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, and one count of vehicular assault in violation of R.C. 2903.08(A)(2)(b), a felony of the fourth degree. Sickels was subsequently sentenced to a prison term of 48 months.

{¶ 11} Sickels filed an appeal and the matter is now before this court for review. He raises three assignment of error as follows:

I

{¶ 12} "THE TRIAL COURT ERRED BY FAILING TO SUPPRESS EVIDENCE OF BLOOD AND URINE TEST RESULTS GATHERED BY A PRIVATE HOSPITAL WITHOUT REQUIRED EXPERT TESTIMONY UNDER R.C. 4511.19(d)(1)(a) OR SUBSTANTIAL COMPLIANCE WITH THE OHIO ADMINISTRATIVE CODE."

II

{¶ 13} "THE TRIAL COURT VIOLATED THE 6TH AMENDMENT PROTECTIONS PROVIDED A CRIMINAL DEFENDANT IN HIS RIGHT TO CONFRONT HIS WITNESSES AND THE EVIDENCE AGAINST HIM."

III

{¶ 14} "THE TRIAL COURT ERRED IN R.C. 4511.19(D)(1)(a) FAILING TO EXCLUDE TESTIMONY OF LAB TECHNICIAN WITNESSES DISCLOSED PREJUDICIALLY HARMING THE DEFENDANT."

I

{¶ 15} In his first assignment of error, Sickels argues the trial court erred in overruling his motion to suppress the results of blood and urine tests without the expert testimony required pursuant to R.C. 4511.19(D)(1)(a) and without a showing of substantial compliance with the Ohio Administrative code. We disagree.

Standard of Review

{¶ 16} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372 ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve

questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314; *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside*, supra; *Dunlap*, supra; *State v. Long*, 127 Ohio App.3d 328, 332 (4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142 (4th Dist. 1996). Accepting those facts as true, a reviewing court must then independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside*, supra, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997). The application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas v. United States*, 517 U.S. 690, 698 (1996).

Sickels' Arguments

{¶ 17} Sickels argues the blood and urine tests should have been suppressed because the State failed to show substantial compliance with the Ohio Administrative Code and R.C. 4511.19(D)(1).

{¶ 18} In support of his argument Sickels cites *State v. Mayl*, 2005-Ohio-4629, which required "[w]hen results of blood-alcohol tests are challenged in an aggravated-vehicular-homicide prosecution that depends upon proof of an R.C. 4511.19(A) violation, the state must show substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm.Code Chapter 3701-53 before the test results are admissible." *Id.* at paragraph one of the syllabus.

{¶ 19} However, R.C. 4511.19(D)(1)(a) has been amended since the *Mayl* decision. That section now provides:

(D)(1)(a) In any criminal prosecution or juvenile court proceeding for a violation of division (A)(1)(a) of this section or for an equivalent offense that is vehicle-related, the result of any test of any blood or urine withdrawn and analyzed at any health care provider, as defined in section 2317.02 of the Revised Code, may be admitted with expert testimony to be considered with any other relevant and competent evidence in determining the guilt or innocence of the defendant.

{¶ 20} In *State v. Davenport*, 2009-Ohio-557 (12th Dist.) the Twelfth District Court of Appeals discussed the post-*Mayl* amendment to R.C. 4511.19(D)(1)(a):

[T]he General Assembly, by passing Am.Sub.H.B. No. 461 which enacted R.C. 4511.19(D)(1)(a), chose to create a distinction between prosecutions for "per se" and "under the influence" violations in regard to the use of blood-alcohol test results. Therefore, we find that the General Assembly's passage of Am.Sub. H.B. No. 461 was made in direct response to *Mayl* and created a distinction between "per se" violations and the general "under the influence" violation not found in the former R.C. 4511.19(D)(1).

. . .

By applying the plain language of R.C. 4511.19(D)(1)(a), we hold that the results of "*any test of any blood* " may be admitted with expert testimony and considered with any other relevant and competent evidence in order to determine the guilt or innocence of the

defendant for purposes of establishing a violation of division R.C. 4511.19(A)(1)(a), or "*an equivalent offense*," including aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a), so long as the blood was withdrawn and analyzed at a "health care provider" as defined by R.C. 2317.12. (Emphasis added.) Accordingly, appellant's arguments, pursuant to R.C. 4511.19(D)(1)(b), and in regard to the state's failure to demonstrate substantial compliance with ODH regulations due to the lack of an established chain of custody and the preservation and labeling of his blood sample, are no longer applicable.

{¶ 21}  *Id*. at ¶ 15-16.

{¶ 22} Other districts have arrived at the same conclusion in cases involving aggravated vehicular homicide. See *State v. Williams*, 2020-Ohio-1367, ¶ 29 (1st Dist.) appeal not accepted 2020-0635; *State v. Persinger*, 2016-Ohio-858, ¶ 18 (3d Dist.); *State v. Bugg*, 2018-Ohio-2544, ¶ 12 (9th Dist).

{¶ 23} Sickler next cites *State v. Hassler*, 2007-Ohio-4947 as evidence that the *Mayl* standard remains despite the amendment to R.C. 4511.19(D)(1). *Hassler*, however, is distinguishable on its facts as the testing of blood was conducted by law enforcement pursuant to a search warrant. *Hassler* at ¶ 3. Sickler cites *State v. Baker*, 2017-Ohio-451 for the same premise, but again, the blood in that matter was tested by a crime lab, not at a hospital during the course of medical treatment. *Id*. ¶¶ 6-8.

{¶ 24} Sickler further argues this court has reaffirmed the *Mayl* standard even after the amendment to R.C. 4511.19(D)(1)(a). He first cites *State v. Morris*, 2012-Ohio-

3210 (5th Dist.). However, again, *Morris* involved testing conducted by law enforcement. Sickels also cites *State v. Schubert*, 2012-Ohio-1478 (5th Dist), but in that matter this court specifically stated:

> In order to be admitted pursuant to R.C. 4511.19(D)(1)(a), the sample must be both withdrawn and analyzed by a health care provider. *State v. Oliver*, 9th Dist. Summit No. 25162, 2010-Ohio-6306, ¶ 15. In the instant case, the blood sample was withdrawn by a health care provider, but was not analyzed by a health care provider. Therefore, we find the trial court erred in finding the results of Appellant's blood test were admissible with expert testimony pursuant to R.C. 4511.19(D)(1)(a).

{¶ 25} *Id.* at ¶ 11, reversed in part on other grounds by *State v. Schubert*, 2022-Ohio-4604.

{¶ 26} Sickels has therefore failed to demonstrate that this court has "reaffirmed *Mayl's* relevance" (brief of appellant at 15) in instances where bodily fluid testing is conducted entirely by a healthcare provider.

{¶ 27} Failing that, Sickels argues the evidence produced by the State at the suppression hearing lacked credibility for various reasons. He complains the State failed to produce the technician who actually conducted the testing at the suppression hearing, failed to present expert testimony at the suppression hearing, failed to produce documentary proof of Cleveland Clinic protocols, and further complains of chain-of-custody gaps.

{¶ 28} First, Sickels appeals the trial court's findings in a suppression hearing. It is well settled that "the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself. At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *State v. Rhines*, 2011-Ohio-3615, ¶ 23 (2d Dist.) citing *United States v. Matlock*, 415 U.S. 164, 172-174 (1974). The State was therefore not required to produce the technician who conducted the testing at the suppression hearing.

{¶ 29} Second, it is well settled that chain-of-custody gaps go to the weight of the evidence, not its admissibility. *State v. Childers*, 2011-Ohio-6742, ¶ 38 (5th Dist.).

{¶ 30} Finally, R.C. 4511.19(D)(1)(a) provides the results of blood or urine testing drawn and analyzed by a healthcare provider "may be admitted with expert testimony to be considered with any other relevant and competent evidence *in determining the guilt or innocence* of the defendant." (Emphasis added.) A suppression hearing does not determine guilt or innocence of a defendant. Moreover, the trial court's judgment entry indicated the State could admit the results of the blood and urine tests at trial in conjunction with expert testimony. Judgment Entry, May 21, 2025 at 6, docket item 139.

{¶ 31} The first assignment of error is overruled.

II

{¶ 32} In his second assignment of error, Sickels argues a denial of his right to confrontation because the State failed to call the technician who performed the blood and urine testing at the suppression hearing. We disagree.

{¶ 33} In support of his Sixth Amendment argument, Sickels cites *Crawford v. Washington*, 541 U.S. 36 (2004), *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Bullcoming v. New Mexico*, 564 U.S. 647 (2011). Each of these cases, however,

involved a defendant's right to confrontation during trial, not a pre-trial proceeding such as the suppression hearing at issue here. "The right to confrontation, which includes the right to physically face and cross-examine witnesses, is not a constitutionally compelled rule of pretrial proceedings." *State v. McKenzie*, 10th Dist. 2011-Ohio-5851, ¶ 8 (10th Dist.), citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 52-53 (1987).

{¶ 34} Also under this assignment of error, Sickels argues his right to confrontation was violated by the hospital's failure to comply with various provisions of the Ohio Administrative Code including failing to preserve the blood and urine samples. But as discussed under the first assignment of error, the Ohio Administrative Code is inapplicable under the facts of this case. Moreover, even if the hospital had been required to preserve the sample, Sickels is required to demonstrate that the State failed to preserve materially exculpatory evidence or destroyed in bad faith potentially useful evidence. *State v. Wells*, 2004-Ohio-1026 (2d Dist) ¶ 21. Sickels has made no such argument.

{¶ 35} The second assignment of error is overruled.

III

{¶ 36} In his final assignment of error, Sickels argues the State committed a discovery violation when it failed to disclose the name of the laboratory technician who performed the testing of the urine and blood until after the suppression hearing and just a few weeks before trial. We disagree.

{¶ 37} In support of his argument Sickels cites Crim.R. 16 (I) which requires the State to disclose the name of any witness it intends to call *in its case-in-chief*. Sickels appears to concede he did receive the name of the technician before a scheduled trial date. Because this matter never proceeded to trial, whether or not the timing of the disclosure prior to trial constitutes a discovery violation is moot.

{¶ 38} As to a lack of disclosure prior to the suppression hearing, we have already established that hearsay is acceptable in suppression hearings. At the suppression hearing Dr. Safar testified that there are 20 lab technicians who are all properly certified and are also trained on Cleveland Clinic policies and procedures. The doctor further stated that the lab is certified by the appropriate governing body and all laboratory instruments are tested before each shift to ensure they are functioning properly. Transcript of suppression hearing at 73-78.

{¶ 39} Sickels nonetheless argues the identity of the technician would have assisted him in the preparation of his motion to suppress and baldly states he was prejudiced by the State's failure to disclose the name of the technician prior to the suppression hearing. Sickels fails to articulate how this information would have been helpful or how he was prejudiced.

{¶ 40} Moreover, as noted by the State, rather than request a continuance in order to obtain the name of the lab technician, Sickels instead went forward on his motion to suppress. Sickels does not provide any citation to the record nor argument to indicate he objected to going forward with the hearing. We therefore find Sickels has forfeited his prejudice argument.

{¶ 41} The final assignment of error is overruled.

{¶ 42} For the reasons stated in our accompanying Opinion, the judgment of the Tuscarawas County Court of Common Pleas is affirmed.

{¶ 43} Costs to Appellant.

By: King, P.J.

Hoffman, J. and

Baldwin, J. concur.